**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 21-10219 |
| | § | |
| SEVEN THREE DISTILLING COMPANY, LLC | § | SECTION A |
| PUTATIVE DEBTOR | § | |
| | § | |
| | § | |

**MOTION OF SEVEN THREE DISTILLING COMPANY, LLC FOR (I) DISMISSAL OF THE INVOLUNTARY PETITION FOR FAILURE TO STATE CLAIM FOR RELIEF; (II) OR, ALTERNATIVELY, DISMISSAL ON ABSTENTION UNDER § 305; AND (III) OTHER RELIEF**

**NOW INTO COURT,** through undersigned counsel, comes the putative debtor herein, Seven Three Distilling Company, LLC, (“***Seven Three***”), and hereby moves for (i) dismissal of the involuntary petition (“***Involuntary Petition***”), filed by 301 North Claiborne, LLC, (“***301NC***”); Debra Levis, as executrix for Robert Levis’ estate; (“***Levis***”); Cher Hunt, (“***Hunt***”); Patrick Dubendorfer, (“***Dubendorfer***”); and Dr. Theresa Turla (“***Turla***”) (collectively, the "***Petitioning Creditors***); (ii) or, alternatively, dismissal of the Involuntary Case on abstention grounds; and (iii) an award of reasonable costs and attorneys' fees upon dismissal under 11 U.S.C. § 303(i).[1]

**SUMMARY OF ARGUMENT**

The Petitioning Creditors have failed to state a *prima facie* case for relief under 11 U.S.C. § 303. The claims listed in the Involuntary Petition (the “***Claims***”) are all subject to *bona fide* dispute. Accordingly, the Involuntary Petition should be dismissed. Because the Involuntary Petition was filed in bad faith, Seven Three submits that issue should be reserved for a subsequent evidentiary hearing to determine the amount of damages Seven Three is entitled to

---

[1] Seven Three reserves any and all rights to pursue claims for bad faith, including, but not limited to, actual and punitive damages and sanctions.

recover from the Petitioning Creditors.

Three of the Petitioning Creditors are parties to pending litigation with Seven Three, which is vigorously contested. Unable to obtain recovery in state court, Dubendorfer, Turla, and 301NC (the "*Litigants*") now wish to use this Court as a second forum to exert pressure on their adversary. For 301NC and its owner, Jeffrey Rogers, ("*Rogers*"), the Involuntary Petition follows at least four prior suits they filed in state court against Seven Three and its principals. This series of Petitions is not only repetitive—each one seems to contradict the last. Adding the Involuntary Petition to the list shows that 301NC's strategy is to wage a war of attrition that will result in either gaining enough leverage to negotiate Rogers' desired ownership and control of the company, or to destroy the company in an "if I can't have it, no one can" approach. The claims of Dubendorfer and Turla are also the subject of contested litigation in Civil District Court. Their claims have been contested by way of answer, affirmative defenses and reconventional demand; and moreover, their interest in the notes is currently subject to a writ of attachment by a third party.

The other two Claims, those asserted by Hunt and Levis, are likewise subject to *bona fide* disputes. Hunt and Levis both purport to be the holders of Convertible Notes (defined hereinbelow); however, neither of them are the named payees on the notes, and the notes are by their terms not transferable. The deficiency as to their claims arises from their failure to adhere to contractual transfer restrictions.

As supported by the records in the myriad lawsuits brought by the Litigants, some of which assert internally inconsistent claims, the Involuntary Petition is a thinly-veiled, bad faith attempt to short circuit the ordinary litigation process in the hopes of extracting recovery on claims contested by Seven Three, for which the Litigants have not demonstrated a right to relief,

or to escape liability for fraudulent actions.

While there can be argument about the relative merit as to these Claims, there can be no doubt that they are all in *bona fide* dispute. The records and documents attached hereto—those which the Court may consider in the context of a Rule 12 motion—show that the Involuntary Petition has not produced a single undisputed claim. Seven Three accordingly requests that the Court dismiss the Involuntary Petition pursuant to Rule 12 of the Federal Rules of Civil Procedure, made applicable herein through Rule 1011(b) of the Federal Rules of Bankruptcy Procedure, and that reasonable costs and attorneys' fees be assessed against the Petitioning Creditors, along with any and all damages and sanctions due to be paid on account of filing the Involuntary Petition in bad faith.

## JURISDICTION

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for purposes of considering this Motion is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BASIS FOR REQUESTED RELIEF

2.      The statutory predicates for the relief requested herein are sections 303 and 305 of chapter 11 of Title 11 of the United States Code ("***Bankruptcy Code***") and Rule 12 of the Federal Rules of Civil Procedure, as made applicable herein pursuant to Rule 1011(b) of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***").[2]

---

[2] Seven Three seeks dismissal of the Involuntary Petition under Rule 12(b)(6) in light of the majority rule that "the requirements of section 303(b) are not jurisdictional . . . but are instead substantive matters which must be proved or waived for petitioning creditors to prevail in involuntary proceedings." *In re AMC Inv'rs, LLC*, 406 B.R. 478, 482 (Bankr. D. Del. 2009) (treating motion to dismiss for failure to satisfy section 303(b) as motion to dismiss for failure to state a claim). For the avoidance of doubt, Seven Three contests the standing of each of the Petitioning Creditors to assert each of their Claims and reserves any and all rights to seek dismissal of the Involuntary Petition on standing or any other grounds.

## BACKGROUND

i.    *Formation of Seven Three*

3.    Founded as a single-member limited liability company in 2016, Seven Three produces, markets, and sells New Orleans-themed wines and spirits from a distillery (the "***Distillery***") located at 301 North Claiborne Avenue, New Orleans, Louisiana.

4.    Seven Three leases the premises for the Distillery from Petitioning Creditor 301NC, wholly-owned by Rogers, pursuant to an *Amended Commercial Lease for 301 N. Claiborne Avenue* (the "***Lease***"). As the tenant, Seven Three is obligated to pay monthly rent, but 301NC is obligated to pay "all real estate taxes related to the [Distillery]." Lease, attached hereto as Exhibit 1, at §1.1(H), p. 2.

ii.    *Dispute with Jeffrey Rogers*

5.    When Seven Three was formed, it was contemplated that Rogers might eventually receive a non-majority ownership interest in the company.

6.    Seven Three's good faith attempts to execute an operating agreement failed due to Rogers' unreasonable positions. Rogers made unfounded demand for majority ownership of Seven Three. He also refused to take actions to divest himself of other business holdings, which would be necessary to satisfy permitting restrictions set by the Louisiana Office of Alcohol and Tobacco Control. When the attempts to reach agreement stalled, Rogers unleashed a barrage of vexatious litigation against Seven Three and its manager, Sal Bivalacqua.

7.    On January 18, 2019, Rogers filed a declaratory action entitled *Jeffrey Rogers v. Salvador Bivalacqua and Seven Three Distilling Company, LLC*, 2019-00686 (the "***Declaratory Action***") seeking recognition as a fifty-percent owner of Seven Three, commencing the first of four lawsuits by Mr. Rogers or 310NC against Seven Three or its principals, each of which

remains pending before Orleans Parish Civil District Court ("**CDC**"). *See* Petition, and Answer and Reconventional Demand in C.D.C. Case no. 2019-00686, attached hereto as Exhibit 2.

8.      Approximately two months later, Rogers filed another lawsuit against Seven Three, entitled *301 North Claiborne, LLC v. Seven Three Distilling Company, L.L.C.*, 2019-3084 (the "**Rescission Suit**") to rescind the Lease for an alleged vice of consent. Seven Three filed reconventional demand against Rogers and entities he controls on September 4, 2019. No other substantive pleadings have been filed to date.   *See* Petition, and Answer and Reconventional Demand in C.D.C. Case no. 2019-03084, attached hereto as Exhibit 3.

9.      When neither of those suits resulted in a judgment or any recognition of the rights Rogers asserted in the lawsuits, 301NC changed course and sued Seven Three on September 30, 2020 to enforce the terms of the Lease which 301NC had previously alleged, in a verified petition, should be declared null and void. *301 North Claiborne, LLC v. Seven Three Distilling Company, L.L.C.*, Civil District Court for the Parish of Orleans, 2020-8262 (the "**Lease Enforcement Suit**").[3] *See* Petition and Declinatory Exception of Lis Pendens filed in C.D.C. Case no. 2020-8262, attached hereto as Exhibit 4.

10.      As set forth in the discussion below, each of the Claims asserted by 301NC are actively disputed in these lawsuits, and are therefore ineligible for commencement of an involuntary case under section 303(b).

   *iii.*    *Disputes as to Convertible Notes*

11.      To raise capital to fund Seven Three's expansion, Seven Three issued convertible notes (the "**Convertible Notes**") to friends and business associates of Seven Three's principals, including Robert Levis, Chad Hunt, and Dubendorfer and his wife, Turla.

---

[3] While Louisiana Civil Procedure, like federal procedure, allows parties to make alternative arguments, no article allows a party to file separate suits, verified under penalty of perjury, that completely contradict one another.

12.     Mr. Bivalacqua knew Dubendorfer through his renovation of property owned by Hadrian Properties, L.L.C. ("*Hadrian*"), a real estate development company owned by an affiliate of Seven Three. True and correct copies of the Convertible Notes issued to Robert Levis, Chad Hunt, Dubendorfer, and Turla are attached hereto and incorporated by reference as Exhibits 7 through 10, respectively.

13.     The Convertible Notes of Dubendorfer and Turla first became suspect when Hadrian alleged that Dubendorfer significantly overbilled Hadrian, and then used the proceeds to purchase the Convertible Notes for himself and his wife. Those notes remain the subject of a bona fide dispute in CDC.

14.     The rights of Dubendorfer and Turla are hotly contested in two pending state court lawsuits, and therefore do not qualify as claims assertable under section 303(b). The putative rights of Dubendorfer and/or Turla in the Convertible Notes have been seized and attached by Hadrian, and it is therefore unclear as to whether they have any right to seek recovery on the notes.  *See* Petition of Dubendorfer, et al, and Answer and Reconventional Demand thereto in C.D.C. no. 2020-00819, attached hereto as Exhibit 5, and Judgment dated Nov. 25, 2020 in C.D.C. no. 2018-11787, attached hereto as Exhibit 6.

15.     The Convertible Notes are unregistered securities subject to transfer restrictions under the Securities Act of 1933 and Louisiana blue sky laws.  Accordingly, the Convertible Notes contain an industry-standard provision barring sale, pledge, or other transfer of the Convertible Notes without consent from Seven Three, in order to ensure that an exemption to state and federal securities laws applies to the transfer proposed by the holder. *See* Convertible Notes of Robert Levis and Chad Hunt, attached hereto as Exhibit 7 and 8, respectively.

16.     Moreover, as a business matter, the transfer restrictions serve a valid business

purpose insofar as they enable Seven Three to know and communicate with those who are obligees on the notes. If the contractual terms of the Convertible Notes were to allow them to be freely assigned, then they could be bought and sold by third parties who might want to take aggressive actions against the company—exactly what was transpired here.

17.     Holders of the Commercial Notes have the option upon maturity of the notes to claim the balance outstanding or convert the notes into equity interests in Seven Three. *See, e.g.*, Exhibit 7, at p. 10, ¶¶ 8-9.

   *iii..    Bankruptcy Filing*

18.     The Petitioning Creditors cite the following six claims as support for the Involuntary Petition:

| Name of Petitioner | Nature of Claim | Amount of the claim above the value of any lien |
|---|---|---|
| 301 North Claiborne LLC | Rent | $36,061.56 |
| Debra Levis as Exox. For Robert Levis | Promissory Note – Principal Balance | $100,000 |
| Cher Levis Hunt | Promissory Note – Principal Balance | $25,000 |
| Patrick Dubendorfer | Promissory Note – Principal Balance | $100,000 |
| M. Theresa Turla | Promissory Note – Principal Balance | $100,000 |
| 301 North Claiborne LLC | Property Taxes | $36,434.42 |

19.     Each of the Claims are subject to *bona fide* dispute as to liability and amount, and therefore cannot be used to meet the threshold requirement of three holders of noncontingent claims not subject to *bona fide* dispute set by section 303(b).

## STANDARD OF REVIEW

20.     The U.S. Supreme Court has held that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matters, accepted as true, to 'state a claim for relief that

is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

21.     One of the purposes of Rule 12(b)(6) motions is to dispose quickly, inexpensively, and efficiently of litigation that on its face is meritless. *Bell Atlantic*, 550 U.S. at 556 ("when the allegations in a complaint, however, true, could not raise a claim of entitlement to relief, this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court" (internal quotations & citations omitted))

22.     A court's review of a motion to dismiss under Rule 12(b)(6) ordinarily is limited to the contents of "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019). A court also may take judicial notice of matters of public record. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). This rule applies with equal force to involuntary bankruptcy petitions pursuant to Bankruptcy Rule 1011(b), which "references Rule 12 of the Federal Rules of Civil Procedure, and states that '[d]efenses and objections to the petition shall be presented in the manner prescribed by Rule 12 Fed. R. Civ. P. . . . " *In re Rodriguez Alzugaray*, 606 B.R. 159, 162 (Bankr. D.P.R. 2019) (quoting FED. R. BANKR. P. 1011(b)).

23.     Following these precedents, the Court may and should consider the Convertible Notes themselves, which are "documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Ironshore*, 912 F.3d at 763; and this Court should consider the record of the CDC proceedings which are "matters of public record" of which this

Court "may take judicial notice." *Walker*, 938 F.3d at 735. These documents establish that all of the claims are subject to *bona fide* dispute, and therefore Section 303 dictates that the Involuntary Petition be dismissed.

## LAW AND ARGUMENT

### I.    The Involuntary Petition Should Be Dismissed for Failure To Meet § 303(b).

24.    Through the Bankruptcy Code, Congress has set stringent requirements for commencement of an involuntary bankruptcy case. *In re Green Hills Dev. Co., L.L.C.*, 741 F.3d 651, 655 (5th Cir. 2014) ("Recognizing that involuntary bankruptcy is a particularly severe remedy, Congress limited the circumstances in which creditors may force a debtor into such a proceeding.").

25.    Among other requirements, an involuntary petition must ordinarily be supported by claims held by at least three entities[4] in the aggregate amount of at least $16,750.00 which are "not contingent as to liability or the subject of a bona fide dispute as to liability or amount." 11 U.S.C. § 303(b)(1); *see also In re Staxxring, Inc.*, 10-30668, 2010 WL 2218935, at *1 (Bankr. N.D. Tex. May 28, 2010) ("Congress has expressed an intent in section 303 of the Bankruptcy Code that creditors with questionable claims ought not to be allowed to force companies into bankruptcy, and in light of this policy, has put forth somewhat stringent standards in section 303(b)(1)").

26.    The Fifth Circuit has adopted an objective standard for determining whether a *bona fide* dispute exists, and thus ineligible to meet the statutory threshold of noncontingent, undisputed claims, if "there is an objective basis for either a factual or a legal dispute as to the validity of the debt." *Matter of Sims*, 994 F.2d 210, 221 (5th Cir. 1993).

---

[4] While only one noncontingent, undisputed claim may be sufficient to initiate a proceeding against an entity with less than twelve creditors, that distinction is immaterial to this Motion, because all of the Claims are disputed.

27.    "Bankruptcy courts routinely consider the existence and character of pending but unresolved litigation as evidence of a bona fide dispute." *In re Green Hills Dev. Co., L.L.C.*, 741 F.3d 651, 659 (5th Cir. 2014).   In recognition of the policy that creditors with questionable claims should not be able to force a debtor into bankruptcy, courts have recognized that "a creditor whose claim is the object of unresolved multiyear litigation should not be permitted to short-circuit that process by forcing the debtor into bankruptcy." *Id.* at 659-660. "The § 303(b) requirement exists to prevent that very use of involuntary bankruptcy." *Id.* at 660.

28.    A bona fide dispute may be shown through "pending, unresolved claims directly concern[ing] the 'liability or amount'" of the alleged debt, including a debtor's assertion of a counterclaim that "arises . . . out of the same transaction which forms the basis of the creditor's claim." *Id.*at 657-659.

A.    *All Claims Listed in the Involuntary Petition Are Subject to Bona Fide Dispute*

29.    None of the Claims are eligible under section 303(b), because each is either actively contested in litigation in which Seven Three has denied liability and asserted offsetting counterclaims, or subject to *bona fide* dispute as to the identity of the person entitled to enforce the Claim.

30.    Significant doubts exist as to the factual and legal bases of 301NC's Claims: the $36,061.56 in allegedly unpaid rent and $36,434.42 for outstanding property taxes, the first of which is subject to *bona fide* dispute in pending litigation, and the second of which is flatly contradicted by the terms of the Lease. Involuntary Petition, p. 4; Lease, attached hereto as Exhibit 1, at §1.1(H), p. 2.

31.    301NC has placed its Claims at issue in two cases before CDC for the Parish of Orleans. First, 301NC sued Seven Three to annul the Lease for an alleged vice of consent, only

to then file a subsequent action (while the first suit was still pending) seeking to enforce the terms of the Lease. Given its own uncorrected disavowal of the Lease, 301NC should not be permitted to use the bankruptcy filing to obtain a third bite at the apple to recover on contradictory Claims.

32.    In addition to the confusion exhibited by 301NC regarding enforceability of the Lease, 301NC's Claim for outstanding property taxes is cast into further doubt by the terms of the Lease setting forth the obligations of 301NC and Seven Three as landlord and tenant.

33.    The Lease establishes the "mutual covenants and agreements" between 301NC and Seven Three regarding its use of the Distillery, and obligates 301NC to pay "all real estate taxes related to the Leased Premises [*i.e.*, the Distillery]." Lease, p. 1; §1.1(H).  Accordingly, the obligation to pay property taxes rests squarely with 301NC. As there is no basis in the Lease for 301NC to assess property taxes against Seven Three under any circumstances, there is no basis for 301NC to claim these amounts from Seven Three.

34.    The claims of Dubendorfer and Turla are disputed on several grounds. As alleged in *Hadrian Props., L.L.C. vs. Dubendorfer, L.L.C.* (18-11787) (the "***Hadrian Case***"), Dubendorfer purchased the Convertible Notes for himself and his wife, Turla, unbeknownst to Seven Three, with proceeds from allegedly fraudulent overbilling on a construction project for Hadrian. Those allegations were substantial enough to warrant the issuance of an interlocutory judgment ordering that Dubendorfer's Convertible Note be held under a Writ of Attachment. Judgment dated Nov. 25, 2020 in C.D.C. no. 2018-11787, attached hereto as Exhibit 6.

35.    Further, Seven Three has directly contested the legal and factual basis for Dubendorfer and Turla to receive payment on the Convertible Notes given, among other things, Hadrian's assertion of a right to the funds used to purchase those notes. After denying liability to

those parties based upon the fraud allegedly committed by Dubendorfer and asserting affirmative defenses to his claims, Seven Three filed a reconventional demand for concursus to require Dubendorfer, Turla, and Hadrian to assert rival claims to payment on the notes in order to protect itself from potential double liability. *See Answer, Affirmative Defenses & Reconventional Demand*, Note Case, P. 7. Seven Three also asserted a counterclaim against Dubendorfer for detrimental reliance based upon Dubendorfer's assurances he would accept equity in Seven Three rather than demand payment.

36. Regarding the remaining two Claims asserted by Levis and Hunt, the apparent breach of the transfer restrictions gives rise to *bona fide* dispute as well. The fact that a *bona fide* dispute exists as to these claims can be shown quite simply by the Convertible Notes themselves, which are attached hereto as Exhibits 7 and 8 respectively.[5] Neither of the Convertible Notes are issued in favor of Levis or Hunt. They are further designated as non-negotiable, and neither Levis nor Hunt has made any allegation that Seven Three consented to the transfer of the Convertible Notes to them.

37. Seven Three cannot repay amounts alleged to be due under the Convertible Notes by an alleged transferee when a rival claimant may or could assert a right to payment. The dispute as to Hunt and Levis's Claims centers on whether they are holders entitled to payment.

38. In Hunt's case, her alleged rights as holder derive, if at all, from a community property settlement dated March 15, 2019 purporting to transfer Mr. Hunt's Convertible Note to Ms. Hunt. Involuntary Petition, pp. 10-15.

39. Seven Three was not consulted prior to the community property settlement, and any "transfer" ostensibly effected through that settlement violated the terms of the Convertible

Note, and may have violated applicable securities laws. Upon confirmation from Hunt that the attempted transfer of the Convertible Note issued in the name of Chad Hunt comports with state and federal securities laws, Seven Three is prepared to pay her the sums due under the Convertible Note; however, until such confirmation is received, Hunt's Claim is subject to *bona fide* dispute, and therefore does not meet the requirements of section 303(b).

40.     A similar impediment bars payment on Levis' Claim at this time. The transfer of the Convertible Note to Levis was not consented to by Seven Three. Subject to its rights under the Convertible Note, Seven Three has requested assurance from Ms. Levis that payment in satisfaction of the note will be administered properly in Levis's probate estate.  Such assurance has not been received. Until such assurance is received, Seven Three is left unable to discern whether payment to Ms. Levis will discharge Seven Three's obligations under the Convertible Note.

## II.      The Involuntary Petition Should Be Dismissed on Abstention Grounds.

41.     Although Seven Three contends dismissal is warranted for failure to assert claims eligible under section 303(b), dismissal is independently supported on abstention grounds under section 305(a)(1).

42.     Section 305(a)(1) authorizes dismissal of a bankruptcy case if "the interests of creditors and the debtor would be better served by such dismissal . . . ." 11 U.S.C. 305(a)(1).

43.     Abstention has been held appropriate "in a case in which an attempt is made to circumvent the Bankruptcy Code by doing indirectly what cannot be done directly, such as . . . the use of a [bankruptcy] case purely as a litigation strategy." *In re First Financial Enters., Inc.*, 99 B.R. 751, 754 (Bankr. W.D. Tex. 1989).

---

[5] As set forth hereinabove, the Convertible Notes may be considered in the context of this Rule 12 Motion insofar as they "are central to the claim and referenced by the complaint." *Ironshore Europe DAC v. Schiff Hardin*, L.L.P., 912

44.     In recognition of the fundamental policy against use of an involuntary petition to coerce settlement in ongoing litigation, "courts generally abstain in two-party disputes where relief is available in a non-bankruptcy forum, because the resolution of these disputes has the potential to transform the bankruptcy process into a collections device, which it is not." *In re Smith*, 415 B.R. 222, 239 (Bankr. N.D. Tex. 2009).

45.     Relevant factors in the abstention analysis include: (i) whether the claims of petitioning creditors are few and implicate purely state-law issues, (ii) whether pending state court litigation is available to resolve those claims, (iii) whether claims would be resolved more efficiently in the existing forum, with the bankruptcy case merely adding a layer of administrative effort and expense, and (iv) whether maintaining the bankruptcy case rather than allowing the claims to be litigated in existing fora would prejudice creditors or the debtor. *See In re Privada, Inc.*, 07-10940; 2008 4692372, at * 3-4 (Bankr. W.D. Tex. Oct. 22, 2018) (citing *In re Spade* 258 BR 221, 231-235 (Bankr. D. Colo. 2001); *In re ELRS Loss Mitigation, LLC*, 325 B.R. 604, 634 (Bankr. N.D. Okla. 2005)).

46.     Each of those factors is present here, and argues strongly in favor of this Court's discretionary abstention. The majority of the Claims, both with respect to numerosity and value, center upon two key disputes: whether Rogers has management or ownership rights of Seven Three and whether Dubendorfer and Turla have a right to enforce the Convertible Notes, which were issued to them, but which were allegedly purchased through fraud. Those disputes implicate purely state law issues for which no federal forum is required.

47.     Furthermore, the Claims asserted by the Litigants are already under consideration in litigation which has been pending in CDC for years. In those cases, Seven Three has filed responsive pleadings, including the assertion of counterclaims, and engaged in extensive motion

F.3d 759, 763 (5th Cir. 2019).

practice and discovery. If the litigation regarding the Claims were stayed in favor of resolution through bankruptcy, the effort and expense incurred by Seven Three over three years to prevail in the litigation would be largely wasted, with Seven Three being forced to litigate the issues again before the Bankruptcy Court.

48.     The Litigants voluntarily chose to litigate their Claims in CDC and should not be permitted to switch to another forum in the hopes of extracting leverage to coerce settlement with Seven Three in litigation in which the Litigants have 1) not demonstrated a right to recover, and 2) face significant opposition from Seven Three, including the assertion of offsetting counterclaims. The Judges in CDC are perfectly capable of resolving the Claims that the Litigants been placed before them, and there is no justification for the Litigants to compel another tribunal to consider those issues, for no other apparent reason than to provide the Claimants with another forum to harass Seven Three.

49.     The fact that a presiding judge in CDC has issued an order of concursus with respect to the Convertible Notes of Dubendorfer and Turla should not be taken lightly. While this Court could certainly gain jurisdiction over those matters if an order for relief were to be entered, it would be disruptive to the process of adjudication and *in rem* jurisdiction that already exists in CDC with respect to those Convertible Notes. This certainly counsels against ordering relief.

50.     Separate and apart from the fact that pending litigation is sufficient to resolve the Claims of the Litigants, there is no reason to create a bankruptcy forum for collective action against the assets of Seven Three. Seven Three is a going concern which generally pays undisputed debts as they become due. It has strong sales, steady growth, and positive name-recognition throughout New Orleans, at least until the Petitioning Creditors attempted to hurt its name by driving Seven Three into bankruptcy. It bears noting that Seven Three has already

proposed a limited collective forum, the concursus, for claimants to assert rights to the Convertible Notes issued to Dubendorfer and Turla. To date, those Litigants have not expressed support for the concursus. The choice not to avail themselves of that collective process, perhaps in recognition of the weakness of their claims, indicates that Dubendorfer and Turla filed the Involuntary Petition not to create a forum for efficient administration of claims, but rather to expose Seven Three to reputational harm in the hopes of compelling settlement from Seven Three as a means of mitigating the damages caused by the Litigants' bad faith filing.

51.    As the Claims of the Petitioning Creditors are capable of resolution outside bankruptcy, either through existing litigation or prompt payment upon assurances that those requesting payment are the proper payees, there is no reason to adjudicate the Claims through bankruptcy, which would only add unnecessary expense and afford the Litigants yet another forum to harass Seven Three in the hopes of coercing settlement or gaining control of a viable and expanding enterprise.

### <u>CONCLUSION</u>

The pleadings, the public record of the pending litigation in CDC, and the face of the Convertible Notes upon which the Petitioning Creditors base their claims establish that each of the Claims asserted in the Involuntary Petition are either meritless or subject to a *bona fide* dispute. Therefore, the Involuntary Petition fails to state a claim upon which relief can be granted. In the alternative, the Court should abstain, because each of the claimants has an alternative venue to pursue their claims. Seven Three requests that the Involuntary Petition be dismissed, reserving all claims for bad faith, damages, and attorney fees for a subsequent hearing.

Respectfully submitted*:*

LUGENBUHL, WHEATON,
PECK, RANKIN & HUBBARD

*/s/ Joseph P. Briggett*
JOSEPH P. BRIGGETT (LA #33029)
CHRISTOPHER CAPLINGER (LA #25357)
JAMES W. THURMAN (LA #38494)
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195
E-mail: jbriggett@lawla.com;
ccaplinger@lawla.com; jthurman@law.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon the parties that receive electronic notice via the Court's CM/ECF system, as well as those parties listed on the attached service list via first class mail on this 15th day of March 2021.

/s/ *Joseph P. Briggett*
Joseph P. Briggett