# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § | CASE NO: 21-10219 |
| | § | |
| SEVEN THREE DISTILLING | § | CHAPTER 11 |
| COMPANY, L.L.C., | § | |
| | § | SECTION A |
| PUTATIVE DEBTOR. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the *Seven Three Distilling Company, LLC's Motion and Incorporated Memorandum for Partial Summary Judgment*, with attached declarations, exhibits, and a *Statement of Uncontested Material Facts* ("SUMF") (collectively, the "Seven Three MSJ"), [ECF Doc. 41], filed by Putative Debtor Seven Three Distilling Company, L.L.C. ("Seven Three") and the objection to the Seven Three MSJ, [ECF Doc. 51], filed by the Petitioning Creditors.[1]  Also before the Court is the *Motion and Incorporated Memorandum for Summary Judgment*, with attached declarations, exhibits, and a *Statement of Uncontested Material Facts* (collectively, the "Petitioning Creditors MSJ"), [ECF Doc. 42], filed by the Petitioning Creditors, and the objection filed in response by Seven Three, [ECF Doc 53].

For the reasons discussed below, the Court (i) **GRANTS IN PART** and **DENIES IN PART** the Seven Three MSJ; and (ii) **GRANTS IN PART** and **DENIES IN PART** the Petitioning Creditors MSJ.

## JURISDICTION AND VENUE

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. § 1334.  The matter presently before the Court constitutes a core proceeding that this Court may

---

[1]     The Petitioning Creditors are:  (i) 301 North Claiborne, LLC; (ii) Debra Levis, as Executrix for the Succession of Robert Levis; (iii) Cher Levis Hunt; (iv) Patrick Dubendorfer; and (v) M. Theresa Turla.

hear and determine on a final basis under 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND[2]

Seven Three is a Louisiana limited liability company formed in April 2015 to produce, market, and sell New Orleans-themed spirits from a distillery New Orleans, Louisiana. *See* Seven Three MSJ, SUMF ¶ 1; Petitioning Creditors MSJ, SUMF ¶ 1. In 2016 and 2017, Seven Three solicited individuals to invest in the company to finance its build-out, including the opening of a distillery. *See* Seven Three MSJ, SUMF ¶ 10; Petitioning Creditors MSJ, SUMF ¶ 2. To raise capital to fund its expansion, Seven Three issued convertible promissory notes (the "Convertible Notes") to thirteen friends and business associates of Seven Three's principals who each agreed to loan between $25,000 and $100,000 to the company. *See* Seven Three MSJ, SUMF ¶ 10; Petitioning Creditors MSJ, SUMF ¶¶ 2 & 4. Those individual investors included Patrick Dubendorfer,[3] Robert Levis,[4] Chad Hunt,[5] and M. Theresa Turla.[6] In exchange for each note holder's investment in the company, Seven Three agreed to repay the principal amount of the investment with 8% interest per annum (the "Payoff Amount") within 36 months of the issuance

---

[2]    The parties agree upon or have not contested the background facts recited by the Court in this section.

[3]    Seven Three issued a Convertible Note in exchange for $100,000 to Patrick Dubendorfer on June 29, 2016. *See* Petitioning Creditors' MSJ, Ex. G & G-1A.

[4]    Seven Three issued a Convertible Note in exchange for $100,000 to Robert Levis on July 25, 2016. *See* Petitioning Creditors MSJ, Ex. D, ¶ 4 & D-2.

[5]    Seven Three issued a Convertible Note in exchange for $25,000 to Chad Hunt on July 25, 2016. *See* Petitioning Creditors MSJ, Ex. E, ¶ 3. The Court notes that Cher Levis's declaration supports the fact that such a note was issued by Seven Three in exchange for their investment, but the note attached to the declaration is issued to Robert Levis, not Chad Hunt or Cher Levis. Filed separately into the record on behalf of the Petitioning Creditors is a document entitled *Exhibits in Support of Statement of Uncontested Material Facts*, which includes a declaration of Chad Hunt, Cher Levis's former husband, and attaches a copy of the Convertible Note issued to Hunt. [ECF Doc. 43].

[6]    Seven Three issued a Convertible Promissory Note in exchange for $100,000 to M. Theresa Turla on May 12, 2017. *See* Petitioning Creditors MSJ, Ex. F, ¶ 3 & F-1.

date (the "Maturity Date"), unless the principal and interest is converted to an equity investment.

*See* Petitioning Creditors MSJ, Exs. D, F, G & E.  Per the terms of each Convertible Note,

> [i]n the event that [Seven Three] issues and sells shares of its Equity Securities . . . to investors . . . on or before the Maturity Date, in an equity financing in one or more series of related closings after the date hereof, with total proceeds to [Seven Three] of at least $1,000,000 (a "Qualified Financing"), the Payoff Amount shall automatically convert without any further action by the Holder into the Equity Securities sold in the Qualified Financing. . . .  If a Qualified Financing occurs after the Maturity Date, the Payor may elect at that time to either convert the Note as described above to the extent of the remaining balance of the Payoff Amount or to have the accrued balance of the Note paid in full out of the proceeds of the Qualified Financing.

Petitioning Creditors MSJ, Ex. D-2, ¶ 1; *see also* Petitioning Creditors MSJ Ex. F-1, ¶ 1 & Ex. G-1A, ¶ 1.

Since January 2016, Seven Three has leased the premises for the distillery from Petitioning Creditor 301 North Claiborne, LLC.  *See* Seven Three MSJ, SUMF ¶ 2; Petitioning Creditors MSJ, SUMF ¶ 7.

On February 22, 2021, the five Petitioning Creditors filed an involuntary chapter 11 bankruptcy petition against Seven Three, alleging on Official Form 205 that "[t]he debtor is generally not paying its debts as they become due, unless they are in the subject of a bona fide dispute as to liability or amount."  [ECF Doc. 1].  On March 15, 2021, Seven Three filed the *Motion of Seven Three Distilling Company, LLC for (I) Dismissal of the Involuntary Petition for Failure To State a Claim for Relief; (II) or, Alternatively, Dismissal on Abstention Under § 305; and (III) Other Relief* (the "Motion To Dismiss"), asserting that each claim held by the Petitioning Creditors is subject to a bona fide dispute and that the Petitioning Creditors filed the involuntary petition in bad faith.  [ECF Doc. 6].[7]  The Motion to Dismiss is currently set for trial for July 9,

---

[7]      Rule 1011 of the Federal Rules of Bankruptcy Procedure allows the putative debtor named in an involuntary petition to contest the petition and requires defenses and objections to the petition to be lodged

2021. [ECF Doc. 77].[8] To potentially obviate the need for a trial or at least reduce the issues for trial, Seven Three and the Petitioning Creditors filed the instant cross-motions for summary judgment on May 3, 2021.

Seven Three asserts it is entitled to partial judgment as a matter of law because there is no genuine dispute that the Petitioning Creditors cannot meet their burden at trial to show that each holder's claim is not subject to a bona fide dispute as to validity or amount or that Seven Three is generally not paying its debts as they become due, excepting such debts subject to such a bona fide dispute. The Petitioning Creditors, conversely, assert they are entitled to partial judgment as a matter of law, as no genuine dispute exists regarding their ability to satisfy their burden to show the requisite number of holders of claims that are not subject to bona fide dispute as to validity or amount and that Seven Three is generally not paying its noncontingent, undisputed debts as they become due.

## DISCUSSION

### A.      Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure is applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

---

in the style and manner of a motion filed under Rule 12 of the Federal Rules of Bankruptcy Procedure. *See* FED. R. BANKR. P. 1011(a)–(b).

[8]      The trial to resolve the Motion To Dismiss was originally set for June 15, 2021. [ECF Doc. 12]. The parties engaged in extensive discovery, resulting in numerous discovery disputes requiring intervention by this Court. Upon agreement of the parties, the Court reset the trial on the Motion To Dismiss to be heard concurrently with the *Motion by Seven Three Distilling for Bond Pursuant to Section 303(e) of the Bankruptcy Code* (the "Bond Motion"), [ECF Doc. 7], and the responses thereto. [ECF Doc. 77].

(1986); *see also* FED. R. BANKR. P. 7056.  Indeed, "[s]ummary judgment is warranted where, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial." *In re Betteroads Asphalt, LLC*, 594 B.R. 516, 541 (Bankr. D.P.R. 2018) (citing *Celotex Corp.*, 477 U.S. at 322).  A party seeking summary judgment must demonstrate:  (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact.  *See Sossamon v. Lone Star State of Tex.,* 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006).  A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party.  *See Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A court views the facts and evidence in the light most favorable to the non-moving party.  *See City & Cnty. of S. F., Cal. v. Sheehan*, 575 U.S. 600, 603 (2015).  Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence.  *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.  *See* FED. R. CIV. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. *See* FED. R. CIV. P. 56(c)(3).  The Court may not make credibility determinations or weigh the evidence in the course of its summary judgment analysis.  *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

When, as here, both parties move for summary judgment, a court must rule on each party's motion on an individual and separate basis. *See White Buffalo Ventures, LLC v. Univ. of Tex. at Austin*, 420 F.3d 366, 370 (5th Cir. 2005). "If there is no genuine issue of material fact and one or the other party is entitled to prevail as a matter of law, a court will render judgment." *Standard Ins. Co. v. Corgill*, No. 3:13-CV-00997, 2013 WL 12101080, at *2 (N.D. Tex. July 23, 2013) (citation omitted).

### B.      Statutory Requirements of an Involuntary Petition

To avoid the misuse of involuntary bankruptcy as a tool for coercion, Congress limited the circumstances under which creditors may force a debtor into such a proceeding. *See Credit Unioin Liquidity Servs., L.L.C. v. Green Hills Dev. Co., L.L.C. (In re Green Hills Dev. Co., L.L.C.)*, 741 F.3d 651, 655 (5th Cir. 2014) (citing 30 CONG. REC. S7618 (daily ed. June 19, 1984)).   Section 303(b) of the Bankruptcy Code, in pertinent part, provides that an involuntary petition must be filed by three or more entities, "each of which is . . . a **holder of a claim** against [the putative debtor] that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount." 11 U.S.C. § 303(b)(1) (emphasis added).[9]   Such "noncontingent, undisputed claims" must aggregate at least $16,750 more than the value of liens on the putative debtor's property.  *Id*. Although a holder may have multiple claims that may "aggregate," a creditor cannot bifurcate its claims and count as more than one "entity" holding such a claim.   *See Subway Equip. Leasing Corp. v. Sims (In re Sims)*, 994 F.2d 210, 217 (5th Cir. 1993). "[T]he policy considerations for the

---

[9]      But if the alleged debtor has fewer than twelve creditors, a single claimholder, excluding employees or insiders of the putative debtor or any transferees who received transfers avoidable under the Bankruptcy Code, may file the petition provided that the claimholder's claim comprises at least $16,750 of the total claims.  11 U.S.C. § 303(b)(2).  For the reasons discussed herein, the Court finds that no reasonable factfinder could dispute that three of the Petitioning Creditors can carry their burden to show they satisfy the § 303(b) requisite that their claims not be the subject of a bona fide dispute as to liability or amount, and, at this time, qualify as Petitioning Creditors.  Thus, the issue of whether three creditors or only one creditor is required for purposes of satisfying § 303(b) is moot.

rules for counting creditors are: (1) 'the fear that involuntary bankruptcy might be used by one or two recalcitrant creditors as a means of harassing an honest debtor'; and (2) 'the possibility that the threat of an involuntary petition would be used to compel the debtor to make preferential payments to one or more litigious creditors.'"   *Id.* (quoting 2 COLLIER ON BANKRUPTCY ¶ 303.08[12][a] (Richard Levin & Henry J. Sommer eds., 16th ed.)).   In sum, at least three petitioning creditors must hold claims against the putative debtor that are not contingent as to liability or the subject of a bona fide dispute, and the claims must aggregate at least $16,750 more than the value of the secured liens on the putative debtor's property.

### 1.   What is a "bona fide" dispute?

To decide whether a bona fide dispute exists, "the bankruptcy court must determine whether there is an objective basis for either a factual or a legal dispute as to the validity of the debt."   *In re Sims*, 994 F.2d at 221 (internal citations and quotations omitted).   "Under this objective standard, the petitioning creditor has the burden to establish a prima facie case that no bona fide dispute exists, after which the debtor must present evidence sufficient to rebut the prima facie case."   *In re Green Hills Dev. Co., L.L.C.*, 741 F.3d at 658 (citing *In re Sims*, 994 F.2d at 221).   The Debtor's subjective intent or belief is not sufficient to meet that burden.   *See In re Sims*, 994 F.2d at 221 (citing *Rimmel v. Mark Twain Bank (In re Rimmel)*, 946 F.2d 1363, 1365 (8th Cir. 1991)).   "The court's objective is to ascertain whether a dispute that is bona fide exists; the court is not to actually resolve the dispute."   *See id.* (quoting *In re Rimmel*, 946 F.2d at 1365); *see also In re Green Hills Dev. Co., L.L.C.*, 741 F.3d at 658.   "This does not mean that the bankruptcy court is totally prohibited from addressing the legal merits of the alleged dispute; indeed, the bankruptcy court may be required to conduct a limited analysis of the legal issues in order to ascertain whether

7

an objected legal basis for the dispute exists." *In re Sims*, 994 F.2d at 221 (quoting *In re Rimmel*, 946 F.2d at 1365).

        *2. Does the existence of litigation regarding the dispute automatically render the creditor's claim the subject of a bona fide dispute?*

      "Bankruptcy courts routinely consider the existence and character of pending but unresolved litigation as evidence of a bona fide dispute." *In re Green Hills Dev. Co., L.L.C.*, 741 F.3d at 659 (citing *In re TPG Troy, LLC*, 492 B.R. 150, 159–60 (Bankr. S.D.N.Y. 2013)). "Pending litigation over a claim strongly suggest, but does not establish, the existence of a bona fide dispute." *In re TPG Troy, LLC*, 492 B.R. at 159. "In particular, 'the existence of affirmative defenses may suggest that a bona fide dispute exists.'" *Id*. (quoting *Liberty Tool Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.)*, 277 F.3d 1057, 1067 (9th Cir. 2002)); *see also Shinko v. Miele*, 29 F. App'x 890, 890 (3d Cir. 2002) (holding that a bona fide dispute existed where the alleged claim had been "seriously contested in many rounds of state court litigation").

      Bona fide disputes under § 303(b) disqualify entities from counting toward the required number of entities needed to file involuntary petitions. But if the § 303(b) requisites are met— that is, there exist a sufficient number of holders of claims that are not subject to bona fide disputes as to validity or amount and those claims aggregate to $16,750 more than the liens against the putative debtor's property—then § 303(h) provides that a court shall enter an Order for Relief in a contested involuntary case after trial only if the putative debtor is "generally not paying" its debts as they become due. Section 303(h), however, contains a qualification: the determination of "generally not paying" debts excludes those debts that are subject to a bona fide dispute as to liability or amount. As explained by one court:

        It is possible that the petitioning creditor (whose claim is subject to a bona fide dispute under section 303(b)) may be a creditor whose claim is excluded from the calculation of the 'generally not paying' standard under section 303(h), for example

because of the existence of a counterclaim. Counterclaims may not make the petitioner's claim disputed for purposes of disqualifying the creditor as a petitioner, but it may render the claim disputed for section 303(h) purposes because the debtor argues that it does not owe the creditor anything.

*In re Betteroads Asphalt, LLC*, 594 B.R. 516, 543 (Bankr. D.P.R. 2018) (quoting 2 COLLIER ON

BANKRUPTCY ¶ 303.11 (Richard Levin & Henry J. Sommer eds., 16th ed.)).

> **C.     Seven Three Is Entitled to Partial Summary Judgment as to Two Petitioning Creditors Who No Reasonable Factfinder Could Find Satisfy the § 303(b) Requisites**

As discussed below, the Court finds that no reasonable factfinder could find that two of the

five Petitioning Creditors, Patrick Dubendorfer and Theresa Turla, can satisfy their burdens to

show they have standing under § 303(b) to file the involuntary petition against Seven Three.[10]

---

[10]     The Petitioning Creditors assert that creditors other than the five Petitioning Creditors also hold claims that are not contingent as to liability and not subject to a bona fide dispute, including that of Anthony Mazzula, who the Petitioning Creditors claim also held a Convertible Note and "would have joined as a petitioning creditor had he not been paid" in full post-petition. *See* Petitioning Creditors MSJ, ¶¶ 14–15, SUMF ¶ 11 & Ex. J (Declaration of Anthony Mazzula). The Petitioning Creditors urge this Court to count Mazzula as a Petitioning Creditor for purposes of § 303(b).

Although the Court may consider the number of unpaid claims against a putative debtor as of the filing date of the involuntary petition for purposes of determining under § 303(h) whether the putative debtor was generally paying its debts as they became due, the fact that other creditors may exist as of the petition date does not transform them into petitioning creditors for purposes of § 303(b). Section 303(b) states that an involuntary case is "commenced by the filing" of a bankruptcy petition by "three or more entities" who meet the claim requirements. The plain language of the statute does not equate the numerosity of total creditors with those who file the petition. The filing of an involuntary petition on Official Form 205 is a pleading and its filing initiates consequential event, such as the imposition of the automatic stay under 11 U.S.C. § 362, as well as the start time for determining preferences and voidable transfers. *See generally* 2 COLLIER ON BANKRUPTCY ¶ 303.08[3] (Richard Levin & Henry J. Sommer eds., 16th ed.). Each petitioning creditor, by signing the petition, makes an unsworn declaration under penalty of perjury permitted under 28 U.S.C. § 1746. *See id.* Further, each petitioning creditor undertakes significant responsibilities and assumes the risks set forth in § 303(i) of the Bankruptcy Code. *See, e.g.*, *In re Kidwell*, 158 B.R. 203, 217 (Bankr. E.D. Cal. 1993) ("Thus, any petitioning creditor in an involuntary case, whether signing the initial petition or later joining as a petitioner under section 303(c), should expect to pay the debtor's attorney's fees and costs if the petition is dismissed.").

Prior to dismissal of the case or entry of an Order for Relief, § 303(c) of the Bankruptcy Code allows other petitioners to join "with the same effect as if such joining creditor were a petitioning creditor under subsection (b) of this section." 11 U.S.C. § 303(c). In fact, original petitioning creditors are free to solicit the intervention of other creditors, and intervention may be permitted at any time before dismissal of the case or the entry of an Order for Relief. *See, e.g.*, *In re QDOS, Inc.*, 607 B.R. 338, 344 (B.A.P. 9th

Based on the pleadings and the declarations and exhibits submitted by the parties, this Court concludes that Seven Three has shown that there is no genuine issue as to any material fact regarding whether the claims held by Dubendorfer and Turla are subject to a bona fide dispute and that Seven Three is entitled to a judgment as a matter of law on the characterization of those claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* FED. R. BANKR. P. 7056.

Patrick Dubendorfer filed the involuntary petition and asserts that he is the holder of a Convertible Note issued by Seven Three for the principal balance of a $100,000. *See* Petitioning Creditors MSJ, Ex. G, ¶ 3 & Ex. G-1A (the "Dubendorfer Note"). In his declaration submitted in support of summary judgment, he states that the Dubendorfer Note matured on June 29, 2019, and that Seven Three "has failed to repay the principal amount of $100,000 due pursuant to the Dubendorfer Note or any other amounts due thereunder." Petitioning Creditors MSG, Ex. G, ¶¶ 4–5. Theresa Turla also filed the involuntary petition and asserts that she is the holder of a Convertible Note issued by Seven Three for the principal balance of a $100,000. [ECF Doc. 1]; *see also* Petitioning Creditors MSJ, Ex. F, ¶ 3 & Ex. F-1 (the "Turla Note"). In her declaration submitted in support of summary judgment, she similarly states that the Turla Note matured on May 12, 2020, and that Seven Three "has failed to repay the principal amount of $100,000 due pursuant to the Turla Note or any other amounts due thereunder." Petitioning Creditors MSG, Ex. F, ¶¶ 4–5.

In January 2020, Dubendorfer and his wife, Theresa Turla, filed suit in Louisiana state court against Seven Three and Bivalacqua & Galante, LLC (the law firm of Salvador Bivalacqua,

---

Cir. 2019); *In re Rimmel,* 946 F.2d at 1366; *In re N. Cnty. Chrysler Plymouth, Inc.*, 13 B.R. 393, 400 (Bankr. W.D. Mo. 1981).

    Therefore, although Anthony Mazzula may have been a creditor on the date of the filing of the petition, the Court will not consider him as a Petitioning Creditor for purposes of § 303(b) because he has not joined in the petition.

Seven Three's member-manager), seeking a declaratory judgment on their right to payment under the Dubendorfer and Turla Notes. *See* Seven Three MSJ, ¶ 15 & Ex. M (the "Convertible Notes Action"). In response, Seven Three filed an *Answer, Affirmative Defenses, and Reconventional Demand*. *See* Seven Three MSJ, ¶ 16 & Ex. N. Seven Three asserted various affirmative defenses including that the Turla Note was not yet due, that Dubendorfer's and Turla's claims are barred by whole or in part by estoppel, and that Dubendorfer and Turla violated the terms of the promissory note requiring full disclosure of their financial position. *See* Seven Three MSJ, ¶ 16 & Ex. N. Further, Seven Three asserted reconventional demands for detrimental reliance and also for concursus, asking the state court to join the Convertible Notes Action as a related matter to a lawsuit pending in the same court and filed by Hadrian Properties, LLC ("Hadrian")[11] against Dubendorfer, LLC, in which Hadrian asserted a right to the funds loaned by Dubendorfer and Turla to Seven Three that served as the basis for the issuance of the Dubendorfer Note and the Turla Note (the "Hadrian Action"). *See* Seven Three MSJ, ¶¶ 17–19 & Ex. M. Seven Three asserted that the claims in the Hadrian Action were the same being litigated by Dubendorfer and Turla against Seven Three and pleaded: "To avoid the danger of double litigation, and the possibility of double liability, Seven Three desires to implead the defendants-in-reconvention and third party defendant, and to require them to assert their respective claims to funds at [*sic*] notes at issue contradictorily against Seven Three and against each other." *See* Seven Three MSJ, Ex. M. The Convertible Notes Action remains pending in state court.

Additionally, Seven Three provided competent summary judgment evidence that, prior to the filing of the involuntary petition, the state court in the Hadrian Action granted a *Motion for Writ of Attachment and Garnishment* filed by Hadrian, leading to the pre-judgment seizure of the

---

[11]     According to the Petitioning Creditors, Hadrian is a client of Salvador Bivalacqua's law firm. [ECF Doc. 51, ¶ 9].

Dubendorfer Note.  *See* Seven Three MSJ, ¶¶ 20–21 & Exs. O & P.   Seven Three asserts that a bona fide dispute exists as to whether Dubendorfer retains any claim for repayment under his Note. The Petitioning Creditors counter that even if Hadrian's claims against Dubendorfer are valid, the specter of Hadrian's unliquidated claim is not a defense to enforcement of the Dubendorfer Note.

As outlined above, although pending litigation does not categorically establish the existence of a bona fide dispute, it strongly suggests it.  *See Liberty Tool Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.)*, 277 F.3d 1057, 1067 (9th Cir. 2002); *In re TPG Troy, LLC*, 492 B.R. 150, 159–60 (Bankr. S.D.N.Y. 2013).  Here, it is uncontested that the parties are actively disputing the legal and factual questions underlying whether Dubendorfer and Turla are entitled to payment on their Notes, with Seven Three raising multiple affirmative defenses and reconventional demands.  Further, the seizure of Dubendorfer's property rights on behalf of a third-party casts additional uncertainly on the legitimacy of his claim.

The Court accordingly finds that Seven Three has raised substantial factual and legal questions regarding Dubendorfer's and Turla's claims and is entitled to partial summary judgment on the issue that those claims are the subject of bona fide disputes as to liability.  Therefore, Dubendorfer and Turla are not eligible petitioning creditors under § 303(b)(1).

**D.    Three Petitioning Creditors Are Entitled to Partial Summary Judgment as to the Issue of Whether Their Claims Are Subject to a Bona Fide Dispute**

*1.    301 North Claiborne, LLC*

Since January 2016, Seven Three has leased the premises for its distillery from Petitioning Creditor 301 North Claiborne, LLC.  *See* Seven Three MSJ, SUMF ¶ 2; Petitioning Creditors MSJ, SUMF ¶ 7.   In early 2019, the relationship soured between Jeffrey Rogers, the principal of 301 North Claiborne, LLC, and Sal Bivalacqua, the member-manager of Seven Three, and litigation ensued.  On January 18, 2019, Rogers in his individual capacity filed a petition for declaratory

12

relief in Louisiana state court against Seven Three and Sal Bivalacqua, seeking control of Seven Three. *See* Seven Three MSJ, ¶¶ 7–8, 47 & Ex. E.  The subject of that lawsuit is unrelated to any lease between Seven Three and 301 North Claiborne, LLC.

In March 2019, 301 North Claiborne, LLC filed suit against Seven Three in Louisiana state court, seeking to rescind Seven Three's lease for an alleged vice of consent (the "Recission Action").  *See* Seven Three MSJ, ¶ 9 & Ex. F.  Seven Three filed an *Answer, Affirmative Defenses, and Reconventional Demand* against 301 North Claiborne, LLC, and, among other requests for relief, asked the state court to enter judgment "declaring the first lease valid and enforceable, or alternatively, a judgment finding the amended lease valid and enforceable." *See* Seven Three MSJ, ¶ 9 & Ex. F.   According to Seven Three, "[n]o other substantive pleadings have been filed to date." *See* Seven Three MSJ, ¶ 9 & SUMF ¶ 7.

On September 30, 2020, 301 North Claiborne, LLC filed a third lawsuit against Seven Three in Louisiana state court, seeking to enforce the terms of the lease between the parties, evict Seven Three, and collect past-due rent (the "Eviction Action").  *See* Seven Three MSJ, ¶ 10 & Ex. G.  In response to the Eviction Action, Seven Three filed a *Declinatory Exception of Lis Pendens*, notifying the state court of the Recission Action involving the same parties and facts, and requesting dismissal of the Eviction Action. *See* Seven Three MSJ, ¶ 10 & Ex. G.  No action has been taken by the state court to date. *See* Seven Three MSJ, ¶ 11.

As a preliminary matter, 301 North Claiborne, LLC filed the involuntary petition against Seven Three, and is listed twice as a Petitioning Creditor, asserting two claims, one for unpaid rent and one for unpaid property taxes.  [ECF Doc. 1].  Although a holder may have multiple claims that may "aggregate," a creditor cannot bifurcate its claims and qualify as a separate holder of each claim.  *See Subway Equip. Leasing Corp. v. Sims (In re Sims)*, 994 F.2d 210, 217 (5th Cir. 1993).

Thus, 301 North Claiborne, LLC can qualify as only one of five Petitioning Creditors here. Further, although "courts have been split on whether a bona fide dispute as to the amount of a creditor's claim—even if there is an undisputed portion of the creditor's claim in excess of the statutory threshold—is sufficient to divest that creditor of standing to file an involuntary bankruptcy petition," at least one court in this Circuit has concluded that a bona fide dispute of a portion of a creditor's claim does not work to disqualify a petitioning creditor entirely under § 303(b), unless the dispute would reduce the undisputed portion of the claim to an amount below the statutory threshold. *In re Williams*, 616 B.R. 690, 693–94 (Bankr. N.D. Tex. 2020).[12]

The Petitioning Creditors here have established that there is no genuine factual dispute exists regarding Seven Three's obligation to pay outstanding rent. The Petitioning Creditors presented evidence that Seven Three failed to pay rent for eight months and currently carries the rent obligation on its books as a loan payable to Jeff Rogers in the amount of $36,000. *See* Petitioning Creditors MSJ, ¶ 45; SUMF Ex. H (Rogers Declaration) & Ex. 1 (lease); Ex. 2 (301 North Claiborne's internal accounting of rent due/paid); Excerpt from Debtor's 2020 Balance Sheet, Bates No. SevenThree000254 (filed under seal).[13] Seven Three points to the litigation of the Recission Action and Eviction Action as evidence that 301 North Claiborne, LLC's claim for

---

[12]     The Lease Agreement, which is included as an exhibit to the Seven Three MSJ, states plainly that the "Landlord shall pay all real estate taxes related to the Leased Premises." Seven Three MSJ, Ex. G, ¶ 5 & Ex. A, ¶ H. This Court does not need to resolve the underlying contract dispute and determine whether 301 North Claiborne, LLC is entitled to be reimbursed for property taxes, but instead must only assess whether a bona fide dispute exists as to its ability to collect them from Seven Three. *See In re Green Hills Dev. Co., L.L.C.*, 741 F.3d 651, 658 (5th Cir. 2014). Here, the Petitioning Creditors have not provided any competent summary judgment evidence that would allow a reasonable factfinder to conclude that 301 North Claiborne, LLC's claim for unpaid property taxes is not subject to bona fide dispute. In line with the *Williams* court, this Court finds that Seven Three's offsetting counterclaims as to the property taxes "can create a bona fide dispute as to amount if they cause the amount owed to the creditor to fall beneath the statutory threshold or could erase the entire debt." 616 B.R. at 694.

[13]     The evidence does not need to be admissible *in form* at this stage, as long as it could be admissible *in content* at trial. *See Winskunas v. Birnbaum*, 23 F.3d 1264, 1268 (7th Cir. 1994).

rent is subject to a bona fide dispute.  Although litigation does exist regarding the lease between

301 North Claiborne, LLC and Seven Three, the litigation is stagnant and in its infancy.  It is not

enough to demonstrate that a bona fide dispute exists as to liability.  Indeed, Sal Bivalacqua states

in his declaration submitted in support of the Seven Three MSJ that "[a]s the tenant, Seven Three

is obligated to pay monthly rent . . . ."  Seven Three MSJ, Ex. A, ¶ 3.  Seven Three provided no

summary judgment evidence to contradict the Petitioning Creditors' evidence that Seven Three

owes past-due rent.

Accordingly, based on the pleadings and the declarations and exhibits submitted by the

parties, this Court concludes that Petitioning Creditor North Claiborne, LLC has shown that no

genuine issue as to any material fact exists regarding whether its claim for unpaid rent is subject

to a bona fide dispute as to liability and amount and that the Petitioning Creditors are entitled to

partial judgment as a matter of law on the same.

### 2.  *Debra Levis*

Debra Levis filed the involuntary petition in her capacity as the Executrix for the

Succession of Robert Levis, her late husband.  [ECF Doc. 1].  She asserts that, in her capacity as

Executrix for her husband's succession, she is the holder of a Convertible Note issued by Seven

Three to Robert Levis for the principal balance of $100,000.  *See* Petitioning Creditors MSJ, Ex.

D, ¶¶ 3–4, Ex. D-1 (Letters of Administration) & D-2 (the "Levis Note").  In her declaration

submitted in support of summary judgment, she states that the Levis Note matured on July 25,

2019, and that Seven Three "has failed to repay the principal amount of $100,000 due pursuant to

the Levis Note."  Petitioning Creditors MSJ, Ex. D, ¶¶ 5–6.

Seven Three asserts that Debra Levis does not hold a claim against the company because

the terms of the Levis Note specify that it is non-transferrable:

> This note is non-negotiable. **This Note may be transferred to a transferee approved by the Payor in writing in its sole discretion, only upon its surrender to the Payor for registration of transfer, duly endorsed, or accompanied by a duly executed written instrument of transfer in form of satisfactory to the Payor, and only in compliance with applicable securities laws.** Thereupon, this Note shall be reissued in the name of, the transferee. Interest and principal shall be paid solely to the registered holder of this Note. Such payment shall constitute full discharge of the Payor's obligation to pay such interest and principal.

Seven Three MSJ, Ex. I-A, ¶ 16 (emphasis added).   Under Louisiana law, executors are "a fiduciary with respect to the succession." LA. CODE CIV. P. art. 3191.   "In that capacity, [s]he is duty bound to collect, preserve, and, as soon as advisable, close the succession, transmitting the property in the decedent's estate to his successors." *Succession of Dean*, 247 So. 3d 746, 762 (La. App. 1 Cir. 2018) (citing LA. CODE CIV. P. arts. 3191, 3211, 3221, and 3197; LA. CIV. CODE. art. 871).   "Generally, a succession representation is the proper plaintiff to sue to enforce a right of the deceased or of his succession, while the latter is under administration." *Id*. at 760 (citing LA. CODE CIV. P. arts. 685 and 3211; LA. CIV. CODE art. 2315.1B).   Further, the Louisiana Code of Civil Procedure provides that "[i]n the performance of his duties, a succession representative may exercise all procedural rights available to a litigant." LA. CODE CIV. P. art. 3196.   "Those duties, which are fiduciary in nature, include but are not limited to the duty of collecting, preserving, and managing the succession property; the duty to enforce all obligations in favor of the succession; and the duty to close the succession as soon as advisable." *Succession of Dean*, 247 So. 3d at 760.

Seven Three presents no other argument, authority, or competent summary judgment evidence indicating that it is not liable to the Succession of Robert Levis for the Levis Note obligation, and the Court finds the Petitioning Creditors have presented uncontroverted summary judgment evidence that Debra Levis's claim, asserted on behalf of Robert Levis's succession, is not subject to a bona fide dispute as to liability.

Seven Three also asserts that a bona fide dispute exists as to the amount of the claim owed under the Levis Note. Seven Three asserts that Levis waived any right to interest when she referenced only the principal amount of the Levis Note on the involuntary petition. *See* Seven Three MSJ, ¶ 61; [ECF Doc. 53, at 8 (citing ECF Doc. 1)]. Further, Seven Three points to the evidence provided by the Petitioning Creditors that Seven Three paid interest earned on the Levis Note between July 4, 2016, through December 31, 2020, asserting that she waived any claim for interest accrued during that time period and that the amount owed pursuant to the Levis Note is therefore subject to a bona fide dispute. *See* Seven Three MSJ, ¶ 60; [ECF Doc. 53, at 8 (citing Declaration of Debra Levis, ¶ 7 & Ex. D-3)]. Finally, Seven Three argues that, because there is a question as to the amount remaining due on the Levis Note after that partial offset, a bona fide dispute exists as to amount that infects the entire claim and disqualifies Debra Levis as a Petitioning Creditor under § 303(b).

As to that final argument that any dispute as to one portion of a claim disqualifies the entire claim for purposes of § 303(b), this Court is disinclined to make that finding, electing to adopt the reasoning discussed in *In re Williams*, 616 B.R. 690 (Bankr. N.D. Tex. 2020). The Court concludes that a bona fide dispute as to a portion of the amount of Debra Levis's claim does not divest her of standing to file an involuntary petition if there is an undisputed portion of her claim in excess of the statutory threshhold. "This interpretation strikes the proper balance 'between the ability of petitioning creditors to have access to the bankruptcy courts and the interest of would-be debtors to remain free from involuntary petitions,' and is in line with the legislative history of section 303(b)(1)." *Id*. at 694 (quoting *In re Gen. Aeronautics Corp.*, 594 B.R. 442, 465 (Bankr. D. Utah 2018)).

Accordingly, based on the pleadings and the declarations and exhibits submitted by the parties, this Court concludes that Debra Levis has shown that there is no genuine issue as to any material fact regarding whether the undisputed amount of her claim for unpaid sums due under the Levis Note is subject to a bona fide dispute as to liability or amount.  Therefore, the Petitioning Creditors are entitled to partial judgment as a matter of law on this issue that her claim meets the § 303(b) requirements up to the undisputed amount remaining due under the Levis Note.

### 3.  *Cher Levis*

Cher Levis filed the involuntary petition and asserts that she is the holder of a Convertible Note issued by Seven Three for the principal balance of a $25,000 by way of a judicial partition of community property following her 2019 divorce from her former husband, Chad Hunt. *See* Petitioning Creditors MSJ, Ex. E, ¶¶ 3–5 & Ex. 3 (Amended Consent Judgment of Partition of Property); [ECF Doc. 43, Ex. 1 (the "Hunt Note")].  In her declaration submitted in support of summary judgment, she states that the Hunt Note matured on June 29, 2019, and that Seven Three "has failed to repay the principal amount of $25,000 due pursuant to the Note."  Petitioning Creditors MSJ, Ex. E, ¶¶ 6, 8. The Petitioning Creditors also included a declaration from Chad Hunt, stating that Cher Levis and he had loaned Seven Three $25,000, that he had not received any payments due under the Note, and that any payments due under the Hunt Note may be made to "Cher Levis Hunt."  [ECF Doc. 43, Ex. C].

Seven Three contends that Cher Levis's $25,000 claim is subject to a bona fide dispute as to liability and amount.  As to liability, Seven Three points to the language in the Hunt Note regarding the non-transferability of the Note:

> This note is non-negotiable. **This Note may be transferred to a transferee approved by the Payor in writing in its sole discretion, only upon its surrender to the Payor for registration of transfer, duly endorsed, or accompanied by a duly executed written instrument of transfer in form of satisfactory to the**

> **Payor, and only in compliance with applicable securities laws.** Thereupon, this Note shall be reissued in the name of, the transferee. Interest and principal shall be paid solely to the registered holder of this Note. Such payment shall constitute full discharge of the Payor's obligation to pay such interest and principal.

Seven Three MSJ, Ex. I-A, ¶ 16 (emphasis added). Similar to the argument made against Debra Levis's claim, Seven Three argues that the Hunt Note is non-transferable, and therefore, Cher Levis has no right to collect amounts due under the Note. *See* Seven Three MSJ, ¶¶ 54–58.

Cher Levis received the rights to the Hunt Note via a state court order, and this Court is disinclined to second-guess the state court's determination that the Hunt Note could be properly transferred through a partition of community property. In this context, "[t]he court's objective is to ascertain whether a dispute that is bona fide exists; the court is not to actually resolve the dispute." *See In re Sims*, 994 F.2d at 221 (quoting *In re Rimmel*, 946 F.2d at 1365); *see also In re Green Hills Dev. Co., L.L.C.*, 741 F.3d at 658.

Further, Seven Three's arguments here appear to belie its true impression regarding the ownership of the Hunt Note. In his declaration submitted in support of the Seven Three MSJ, Sal Bivalacqua stated that, at the time of the filing of the involuntary petition, "Seven Three had been notified of the purported transfers and was working on repayment of the Robert Levis and Chad Levis [*sic*] notes despite the transfer issues. Seven Three was actually in the process of making payments to them, subject to verification of the transfers and misunderstandings about the correct amounts due." Seven Three MSJ, Ex. A, ¶ 30. And, as an exhibit to her declaration, Cher Levis included an e-mail she sent to Sal Bivalcqua, dated February 14, 2020, stating: "Hi Sal, I am requesting to be paid my investment +8% interest as per the contract. Thank you." Petitioning Creditors MSJ, Ex. E, ¶¶ 3–5 & Ex. 3 (Bates No. SevenThree000098). Bivalacqua responded:

> The note is due in July and we will repay then. That said, if you wish to be repaid early, I will work on that. As discussed with Debe, the distillery doesn't have the money, so I'm putting the money together personally. Also once I repay you in full

19

with interest, we need to discuss the tail incentive.  You will get your pro rata share [based on million dollar investment as stated in note] of future profits.  Because of the circumstances, we have not yet had profits and likely won't this year either.  So, at your discretion, I suggest starting your profit sharing period beginning January of next year.  But I can give you the financials at end of year and let you decide then if you wish.

*Id.*

Seven Three presents no other argument, authority, or competent summary judgment evidence indicating that it is not liable to Cher Levis for the Hunt Note obligation, and the Court finds the Petitioning Creditors have presented uncontroverted summary judgment evidence that Cher Levis's claim is not subject to a bona fide dispute as to liability.

Seven Three also raises the same objection to the Cher Levis claim as it did to the Debra Levis claim regarding the amount of the claim:  That a bona fide dispute exists as to the amount owed under the Hunt Note due to an alleged waiver of the right to interest or a disagreement over the amount of interest owed and, therefore, Cher Levis should be disqualified as a § 303(b) Petitioning Creditor.  But for the reasons cited above, this Court invokes the reasoning in *In re Williams*, 616 B.R. 690 (Bankr. N.D. Tex. 2020), and concludes that a bona fide dispute as to the amount of Cher Levis's claim does not divest her of standing to file an involuntary petition if there is an undisputed portion of her claim in excess of the statutory threshold.[14]

---

[14]     Although the Court has found that the claims of three Petitioning Creditors are not subject to bona fide disputes, no evidence has been submitted to the Court regarding the latter requirement of § 303(b)(1) that "noncontingent, undisputed claims aggregate at least $16,750 **more than the value of any lien on property of the debtor securing such claims held by the holders of such claims**."  11 U.S.C. § 303(b)(1) (emphasis added).  "The use of the word 'aggregate' in section 303(b) means that it is the total of the claims of the petitioning creditors that matters, not whether one particular petitioning creditor is owed a prescribed amount."  2 COLLIER ON BANKRUPTCY ¶ 303.12 (Richard Levin & Henry J. Sommer eds., 16th ed.). "Further, the use of the word 'aggregate' in section 303(b) applies only to the creditors commencing the case . . . ."  *Id.*   Therefore, the Court reserves this issue for trial.

**D.    The Issue of Whether the Putative Debtor Is Paying Debts as They Become Due Is a Fact-Intensive Inquiry Better Suited for Resolution at Trial**

The Petitioning Creditors seek an award of partial summary judgment on the issue of whether Seven Three was generally paying its undisputed debts as they came due.  *See* Petitioning Creditors MSJ, ¶¶ 52–58.  The burden is on the Petitioning Creditors to show that Seven Three is not generally paying its undisputed debts.  *See In re Acis Capital Mgmt., L.P.*, 584 B.R. 115, 143 (Bankr. N.D. Tex. 2018) (citing *Norris v. Johnson (In re Norris)*, No. 96-30146, 1997 WL 256808, at *3–4 (5th Cir. Apr. 11, 1997)).  Seven Three asserts that the Petitioning Creditors cannot satisfy that burden, and declares that it was "substantially current on all of its non-disputed claims as of the Petition Date."  Seven Three MSJ, at ¶¶ 67 & 70.

"Section 303(h)'s 'generally not paying' standard is not a balance-sheet insolvency test based on a comparison of assets and liability."  *In re Bates*, 545 B.R. 183, 186 (Bankr. W.D. Tex. 2016) (citing *In re Green Hills Dev. Co., LLC*, 445 B.R. 647, 657 (Bankr. S.D. Miss. 2011)).  "The question is not whether a putative debtor can pay his debts, but rather, whether a putative debtor is paying his debts."  *Id.* (citation omitted).  When making such a determination, this Court "must look to four factors:  (1) the number of unpaid claims, (2) the amount of such claims, (3) the materiality of the non-payments, and (4) [the putative debtor's] overall conduct in [its] financial affairs."  *In re Edwards*, 501 B.R. 666, 682 (Bankr. N.D. Tex. 2013) (citation omitted).  "No one factor is more meritorious than another; what is most relevant depends on the facts of each case."  *In re Bates*, 545 B.R. at 186.

"[B]ankruptcy courts throughout this circuit do not consider small recurring creditors in determining the number of creditors."  *Id.* at 188 (citing cases); *see also In re Smith*, 415 B.R. 222, 232 (Bankr. N.D. Tex. 2009) (citations omitted).  "Further, postpetition payment of debts that were due as of the petition date may not be considered by the Court."  *In re Edwards*, 501 B.R. at 682

(citing *In re Sims*, 994 F.2d at 222).  Insiders as well, both those identified in the Bankruptcy Code and "extra-statutory insiders that do not deal at arms length," must be excluded from the creditor count when determining whether  a putative debtor is paying its debts as they become due.  *In re Smith*, 415 B.R. at 232–33.  Due to the fact-intensive nature of this inquiry, the Court will defer its ruling after evidence is presented at the trial on these issues.

## CONCLUSION

Accordingly, for the aforementioned reasons,

**IT IS ORDERED** that the Petitioning Creditors MSJ is GRANTED IN PART and DENIED IN PART.  Petitioning Creditors are entitled to partial summary judgment on the issue that 301 North Claiborne LLC's claim for unpaid rent, Debra Levis's claim under the Levis Note, and Cher Levis's claim under the Hunt Note are not the subject of bona fide disputes as to liability and any bona fide dispute as to the amount of those claim does not divest those Petitioning Creditors of standing to file an involuntary petition if there remains an undisputed portion of those claims in excess of the statutory threshold.

**IT IS FURTHER ORDERED** that the Seven Three MSJ is GRANTED IN PART and DENIED IN PART.  Seven Three is entitled to partial summary judgment on the issue that the claims held by Patrick Dubendorfer and Theresa Turla are the subject of bona fide disputes as to liability, and, therefore, Dubendorfer and Turla are not eligible petitioning creditors under § 303(b)(1).

**IT IS FURTHER ORDERED** that, because the Petitioning Creditors have shown that they are entitled to summary judgment as to three holders of claims that are not contingent as to liability or the subject of a bona fide dispute as to liability or amount, on **Friday, July 9, 2021, at**

**9:00 A.M.,** the Court will hold a trial to resolve the remaining issues in the pending Motion To Dismiss and the Bond Motion, specifically focusing on

    (i)    whether "noncontingent, undisputed claims aggregate at least $16,750 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims" pursuant to § 303(b)(1);

    (ii)    whether Seven Three is generally not paying its debts as they become due unless such debts are the subject of a bona fide dispute as to liability or amount pursuant to § 303(h);

    (iii)    whether, if permitted in this Circuit, the Court should dismiss this involuntary bankruptcy case—even if § 303's statutory requirements have been met—based upon an independent finding of bad faith on the part of the Petitioning Creditors;

    (iv)    whether, if the Court dismisses this involuntary bankruptcy case other than on the consent of all Petitioning Creditors and Seven Three and if Seven Three does not waive the right to judgment under § 303(i), the Court should grant judgment against the Petitioning Creditors and in favor of Seven Three for costs, attorneys' fees, or against any Petitioning Creditor that filed the petition in bad faith for damages proximately cause by the filing or punitive damages pursuant to § 303(i); and

    (v)    whether the Court should abstain and dismiss the involuntary petition pursuant to § 305 of the Bankruptcy Code.

    **IT IS FURTHER ORDERED** that, because the Court has found that no genuine disputes of material facts exist as to whether three Petitioning Creditors can carry their burden to show they satisfy the § 303(b) requisite that their claims are not the subject of bona fide disputes as to liability or amount, and, at this time, they qualify as Petitioning Creditors, the issue of how many creditors Seven Three has as of the petition date and whether three petitioning creditors are required or only one petitioning creditor is required for purposes of satisfying § 303(b) is moot.

**IT IS FURTHER ORDERED** that, should the trial on these matters fail to conclude on July 9, 2021, the trial will be continued and will resume on **Tuesday, July 13, 2021, at 9:00 a.m.**

New Orleans, Louisiana, July 6, 2021.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE