## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: | § | CASE NO: 21-10219 |
|  | § |  |
| SEVEN THREE DISTILLING | § | CHAPTER 11 |
| COMPANY, L.L.C., | § |  |
|  | § | SECTION A |
| PUTATIVE DEBTOR. | § |  |

## MEMORANDUM OPINION AND ORDER

This Court conducted a three-day evidentiary hearing on July 9, 13, and 21, 2021, (the "Hearing") to resolve the *Motion of Seven Three Distilling Company, LLC for (I) Dismissal of the Involuntary Petition for Failure To State a Claim for Relief; (II) or, Alternatively, Dismissal or Abstention Under § 305; and (III) Other Relief* (the "Motion To Dismiss"), [ECF Doc. 6], and the *Motion by Seven Three Distilling Co. LLC for Bond Pursuant to Section 303(e) of the Bankruptcy Code* (the "Bond Motion"), [ECF Doc. 7], both filed by the putative debtor, Seven Three Distilling Company, L.L.C. ("Seven Three"). An opposition to the Bond Motion was filed by the petitioning creditors: (i) 301 North Claiborne, LLC; (ii) Debra Levis, as Executrix for the Succession of Robert Levis; (iii) Cher Levis Hunt; (iv) Patrick Dubendorfer; and (v) M. Theresa Turla (collectively, the "Petitioning Creditors"). [ECF Doc. 17]. Seven Three filed a reply brief in support of its Bond Motion, [ECF Doc. 24]. The list of witnesses who testified and documents admitted as evidence is listed in this Court's Order dated July 22, 2021. [ECF Doc. 131]. Pursuant to that Order, the parties submitted post-trial briefs. [ECF Docs. 136 & 137]. The Court took the matter under submission.

Having now considered the evidence, the arguments of counsel, and the applicable law, this Court finds that the Motion To Dismiss should be denied and an Order of Relief should be entered on the involuntary chapter 11 bankruptcy petition (the "Petition") filed by the Petitioning

Creditors.  Moreover, the Court declines to abstain from adjudicating this dispute.  Finally, the Court denies the Bond Motion as moot.  The Court now makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable to these proceedings by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.[1]

## PROCEDURAL BACKGROUND

On February 22, 2021, the Petitioning Creditors filed an involuntary chapter 11 bankruptcy petition against Seven Three, alleging on Official Form 205 that "[t]he debtor is generally not paying its debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount."  [ECF Doc. 1].  On March 15, 2021, Seven Three filed the Motion To Dismiss and the Bond Motion.[2]  The Motion To Dismiss asserted two arguments:  (i) the Petitioning Creditors cannot meet the standing requirements of 11 U.S.C. § 303(b), which requires that the Petition have been filed by three or more entities, each of which is either a holder of a claim against a putative debtor that is not contingent as to liability or amount and whose claims aggregate to more than $16,750; and (ii) this Court should abstain under 11 U.S.C. § 305 as this is essentially an two-party dispute for the control of Seven Three and dismissal is in the best interests of the debtor and its creditors.  Seven Three further requested damages under § 303(i), asserting that the Petitioning Creditors filed the Petition in bad faith as a litigation tactic.

---

[1]      These findings of fact and conclusions of law constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.  To the extent that any of the following findings of fact are determined to be conclusions of law, they are adopted and shall be construed and deemed conclusions of law.  To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted and shall be construed and deemed as findings of fact.

[2]      Rule 1011 of the Federal Rules of Bankruptcy Procedure allows the putative debtor named in an involuntary petition to contest the petition and requires defenses and objections to the petition to be lodged in the style and manner of a motion filed under Rule 12 of the Federal Rules of Bankruptcy Procedure.  *See* FED. R. BANKR. P. 1011(a)–(b).

The parties engaged in extensive discovery. On May 5, 2021, to potentially obviate the need for a trial or at least reduce the issues for trial, the parties filed cross motions for summary judgment. [ECF Docs. 41 & 42]. After considering the submissions by the parties, including memoranda in support, statements of uncontested facts, sworn declarations, and evidence submitted in support of each moving party's summary judgment motion, this Court granted in part and denied in part each party's motion. [ECF Doc. 113]. The Court found that three of the five Petitioning Creditors—301 North Claiborne LLC, Debra Levis, and Cher Levis—held undisputed claims and that those Petitioning Creditors had standing under § 303(b)(1) of the Bankruptcy Code to fil an involuntary petition. The Court also found Seven Three to be entitled to partial summary judgment on the claims held by the remaining two Petitioning Creditors, Patrick Dubendorfer and M. Theresa Turla, as those claims are the subject of bona fide disputes as to liability; therefore, those Petitioning Creditors are not eligible petitioning creditors under § 303(b)(1). The Court found that, although the parties presented argument on whether Seven Three was generally not paying its undisputed debts as those debts became due, *see* 11 U.S.C. § 303(h), the parties did not offer sufficient summary judgment evidence on that issue and thus deferred its ruling on that issue until after evidence was presented at the Hearing.[3]

---

[3]    Section 303(b) of the Bankruptcy Code, in pertinent part, provides that an involuntary petition must be filed by three or more entities, "each of which is . . . a **holder of a claim** against [the putative debtor] that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount." 11 U.S.C. § 303(b)(1) (emphasis added).  In its opinion granting in part and denying in part each party's motion for summary judgment, the Court noted that, if the alleged debtor has fewer than twelve creditors, a single claimholder, excluding employees or insiders of the putative debtor or any transferees who received transfers avoidable under the Bankruptcy Code, may file the petition provided that the claimholder's claim comprises at least $16,750 of the total claims.  11 U.S.C. § 303(b)(2).  In granting partial summary judgment to the Petitioning Creditors, the Court found that no reasonable factfinder could dispute that three of the Petitioning Creditors could carry their burden to show they satisfy the § 303(b) requisite that their claims not be the subject of a bona fide dispute as to liability or amount, and, therefore, at that time, qualified as Petitioning Creditors.  Thus, the issue of whether three creditors or only one creditor is required for purposes of satisfying § 303(b) in this case was rendered moot.

Prior to the Hearing, the Petitioning Creditors filed a *Motion in Limine To Exclude Evidence Regarding Motivation for Filing Case and Incorporated Memorandum* (the "Motion in Limine"), [ECF Doc. 91], asserting that "[t]he motivation or good faith of the petitioning creditors is not relevant unless the case has been dismissed for failure to comply with the statutory requirements of 11 U.S.C. § 303(b) and (h)." Thus, the Petitioning Creditors argued that presenting evidence at the Hearing on their alleged bad faith in filing the Petition would be premature. In its opposition to that motion, Seven Three asserted that the issue of Petitioning Creditors' alleged bad faith was relevant to the Court's consideration of abstention under § 305, but also argued that presenting such evidence at the Hearing is relevant and necessary because "bad faith [provides] independent grounds to dismiss an involuntary petition even if other requirements under § 303 are met." [ECF Doc. 103, ¶ 9]. The Court denied the Motion in Limine and allowed Seven Three to present evidence of the Petitioning Creditors' bad faith in filing the Petition, without ruling on Seven Three's assertion that a good-faith filing requirement applies to involuntary bankruptcy petitions. [ECF Doc. 105].

Thus, the issues before the Court at the Hearing included:

(i)  whether Seven Three is generally not paying its debts as they become due unless such debts are the subject of a bona fide dispute as to liability or amount pursuant to § 303(h);

(ii)  whether, if permitted in this Circuit, the Court should dismiss this involuntary bankruptcy case—even if § 303's statutory requirements have been met—based upon an independent finding of bad faith on the part of the Petitioning Creditors;

(iii)  whether, if the Court dismisses this involuntary bankruptcy case for a failure to satisfy the statutory requirements for filing the Petition under § 303(b) and (h), the Court should grant judgment against the Petitioning Creditors and in favor of Seven Three for costs and attorneys' fees, or against any Petitioning Creditor that filed the petition in bad faith for damages proximately cause by the filing or punitive damages pursuant to § 303(i); and

(iv)    whether the Court should abstain and dismiss the involuntary petition pursuant to § 305 of the Bankruptcy Code.

## JURISDICTION

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. § 1334. The matter presently before the Court constitutes a core proceeding that this Court may hear and determine on a final basis under 28 U.S.C. § 157(b).

## FINDINGS OF FACT

Seven Three is a Louisiana limited liability company organized in April 2015 by Salvador Bivalacqua ("Sal") and Jeff Rogers ("Jeff"), former high school friends and college roommates, to produce, market, and sell New Orleans-themed spirits from a distillery in New Orleans, Louisiana. *See* Hr'g Tr. 2-248:12–18. No written operating agreement identifying the ownership structure of the company was ever executed. *See* Hr'g Tr. 1-42:19 to 1-49:7; 2-126:10 to 2:130-6; 2-149:12 to 2-159:5. In 2016 and 2017, to raise capital to fund the building of the company's distillery and the operations of the business, Seven Three issued convertible promissory notes (the "Convertible Notes") to thirteen friends and business associates of Sal and Jeff in exchange for loans to the company in amounts ranging between $25,000 and $100,000; those investors included Patrick Dubendorfer, Robert Levis,[4] Chad Hunt,[5] and M. Theresa Turla.[6] *See* Exs. Seven Three G & H;

---

[4]     Seven Three issued a Convertible Note in exchange for $100,000 to Robert Levis on July 25, 2016. *See* Ex. Seven Three G. Mr. Levis passed away in August 2018 and his wife, Debra Levis, was appointed the Executrix for her late husband's succession estate. *See* Hr'g Tr. 3-138:1-25. Debra Levis asserts that, as the Executrix, she is the holder of the Convertible Note issued in her late husband's name and filed the involuntary petition in that capacity. *See* Hr'g Tr. 3-138:1 to 3-139:25.

[5]     Seven Three issued a Convertible Note in exchange for $25,000 to Chad Hunt on July 25, 2016. *See* Ex. Seven Three H. Cher Levis filed the involuntary petition and asserts that she is the holder of a Convertible Note issued by Seven Three for the principal balance of a $25,000 by way of a judicial partition of community property following her 2019 divorce from her former husband, Chad Hunt. Hr'g Tr. 3-173:1–25.

[6]     Seven Three issued a Convertible Promissory Note in exchange for $100,000 to M. Theresa Turla on May 12, 2017. *See* Ex. Petitioning Creditors 1 (Turla Exhibit 1).

Ex. Petitioning Creditors 1 (Turla Exhibit 1); Ex. Petitioning Creditors 6 (Bates 21) (filed under seal); Hr'g Tr. 1-73:13 to 1-74:3. In exchange for each Noteholder's investment in the company, Seven Three agreed to repay the principal amount of the investment with 8% interest per annum (the "Payoff Amount") within 36 months of the issuance date (the "Maturity Date"), unless the principal and interest is converted to an equity investment. *See* Ex. Seven Three G; Hr'g Tr. 1-173:13–21. Per the terms of each Convertible Note,

> [i]n the event that [Seven Three] issues and sells shares of its Equity Securities . . . to investors . . . on or before the Maturity Date, in an equity financing in one or more series of related closings after the date hereof, with total proceeds to [Seven Three] of at least $1,000,000 (a "Qualified Financing"), the Payoff Amount shall automatically convert without any further action by the Holder into the Equity Securities sold in the Qualified Financing. . . . If a Qualified Financing occurs after the Maturity Date, the Payor may elect at that time to either convert the Note as described above to the extent of the remaining balance of the Payoff Amount or to have the accrued balance of the Note paid in full out of the proceeds of the Qualified Financing.

Ex. Seven Three G, Ex. A ¶ 1. Paragraph 8 of each Convertible Note states that "[u]nless this Note has been converted or otherwise paid in accordance with the terms hereof, the Payoff Amount shall become fully due and payable on the Maturity Date." *Id*. at Ex. A ¶ 8. Lastly, each Convertible Note contained the following provision: "Any term of this Note may be amended or waived only with the written consent of both the Payor and the Holder." *Id*. at Ex. A ¶ 15.

Seven Three did not obtain third-party Qualified Financing prior to the Maturity Date of each Convertible Note, so none of the Payoff Amounts owed under each Convertible Note were automatically converted to equity securities pursuant to the terms of each Note. *See* Hr'g Tr. 1-127:5–12. As of the Petition Date, all but one of the Convertible Notes had matured. *See* Hr'g Tr. 1-170:20 to 1-179:2. Further, as of the Petition Date, Seven Three still had not obtained third-party Qualified Financing, so each Noteholder holding a matured Note had not received their choice of the Payoff Amount in full with interest or equity in the company. *See* Ex. Seven Three

G, Ex. A, ¶ 1; Hr'g Tr. 1-127:5–12; Hr'g Tr. 3-148:1 to 3-164:6; Hr'g Tr. 3-188:4–18.  In short, but for one Convertible Note that Seven Three paid in full post-petition, Seven Three has not paid the Payoff Amounts due in full with interest pursuant to the terms of each Convertible Note.  *See* Hr'g Tr. 1-127:15 to 1-128:20; 2-32:19 to 2-33:5.[7]  Of the claims held by Petitioning Creditors, two are undisputed debts owed pursuant to Convertible Notes totaling $125,000 in principal plus interest. As of the Petition Date, Seven Three also owed $275,000 in principal plus interest to other holders of Convertible Notes.  *See* Petitioning Creditors Ex. 6 (Bates 21) (filed under seal).

Since January 1, 2016, Seven Three has leased the premises for the distillery from Petitioning Creditor 301 North Claiborne, LLC at a rate of $4500 per month.  *See* Ex. Seven Three A (the "Lease").  Jeff is the sole member-manager of 301 North Claiborne, LLC.  *See* Hr'g Tr. 2-147:20–148:9.  Per the terms of the Lease, the rent owed between January 1, 2016, and June 30, 2016, was abated.  *See* Lease, § F.  The evidence presented at the Hearing showed gaps in the payment of rent by Seven Three for rent owed in October and November of 2017, as well as between January and May 2018 and for the month of November 2018, totaling $36,000 in past-due rent.  *See* Petitioning Creditors Ex. 6 (Bates 22–23).

Other than amounts owed under twelve Convertible Notes and the past-due rent obligation, Seven Three has a limited number of debts that were owing as of the Petition Date.  *See* Seven Three Ex. MMM ("A/P Aging Summary").

---

[7]     The evidence showed that Seven Three issued checks in December 2020 to Debra and Cher Levis purportedly to pay interest due under the Convertible Notes for 2020.   But the amounts of the checks were "woefully miscalculated" and far below the interest owed. *See* Hr'g Tr. 1-96:6 to 1-101:4; 3-162:20–23.

# CONCLUSIONS OF LAW

**A.**     **Seven Three Is Generally Not Paying Its Undisputed Debts as They Become Due**

In its decision granting partial summary judgment to the Petitioning Creditors, this Court found that the Petitioning Creditors satisfied a portion of § 303(b)'s requirements, that is, at least three Petitioning Creditors hold claims against Seven Three that are not contingent as to liability or the subject of a bona fide dispute.  [ECF Doc. 113, at 12–20].  The evidence at trial confirmed that those noncontingent, undisputed claims held by Debra Levis, Cher Levis Hunt, and 301 North Claiborne LLC aggregate in an amount over $16,750.   *See* Hr'g Tr. 3-148:1 to 3-164:6; 3-173:1 to 3-185:12; 2-279:6 to 2-282:12.[8]  Thus, the Court's evaluation shifts to § 303(h), which provides that a court shall enter an Order for Relief in a contested involuntary case after trial only if the putative debtor is "generally not paying" its undisputed debts as they become due.  The Petitioning Creditors bear the burden to show that Seven Three is not generally paying its undisputed debts. *See In re Acis Capital Mgmt., L.P.*, 584 B.R. 115, 143 (Bankr. N.D. Tex. 2018) (citing *Norris v. Johnson (In re Norris)*, No. 96-30146, 1997 WL 256808, at *3–4 (5th Cir. Apr. 11, 1997)).  And that determination is made as of the Petition Date.  *See id.* (citing *Subway Equip. Leasing Corp. v. Sims (In re Sims)*, 994 F.2d 210, 222 (5th Cir. 1993)).

"Section 303(h)'s 'generally not paying' standard is not a balance-sheet insolvency test based on a comparison of assets and liability."  *In re Bates*, 545 B.R. 183, 186 (Bankr. W.D. Tex. 2016) (citing *In re Green Hills Dev. Co., LLC*, 445 B.R. 647, 657 (Bankr. S.D. Miss. 2011)).  "The question is not whether a putative debtor can pay his debts, but rather, whether a putative debtor is paying his debts."  *Id.* (citation omitted).  When making such a determination, this Court "must

---

[8]     The evidence indicated that Seven Three holds no secured debt.  *See* Hr'g Tr. 2-282:6–12; 3-160:10–24.

look to four factors:  (1) the number of unpaid claims, (2) the amount of such claims, (3) the materiality of the non-payments, and (4) [the putative debtor's] overall conduct in [its] financial affairs." *In re Edwards*, 501 B.R. 666, 682 (Bankr. N.D. Tex. 2013) (citation omitted).  "No one factor is more meritorious than another; what is most relevant depends on the facts of each case." *In re Bates*, 545 B.R. at 186.

"Section 303(h) requires that the court consider both the amount of the debt not being paid and the number of creditors not being paid." *In re Smith*, 415 B.R. 222, 231 (Bankr. N.D. Tex. 2009) (internal quotations and citations omitted).  "Thus, the alleged debtor may not be 'generally' paying his debts as they come due when he is not paying one hundred percent of his debts to only one creditor, or paying most of his debts in number to small recurring creditors, but is not paying a few creditors that make up the bulk of his debts." *Id.* (citations omitted); *see also In re Acis Capital Mgmt., L.P.*, 584 B.R. at 143 (citing cases including *Knighthead Master Fund, L.P. v. Vitro Packaging, LLC (In re Vitro Asset Corp.)*, No. 11-DV-2603 (N.D. Tex. Aug. 28, 2012)). "When considering the number and amount of unpaid claims, the Court should include creditors who are not currently pressing the alleged debtor for payment, if their debts have become due." *In re Smith*, 415 B.R. at 231 (citations omitted).  "Furthermore, any debt which the alleged debtor is not current on as of the petition date should be considered as a debt not being paid as it became due." *In re Acis Capital Mgmt., L.P.*, 584 B.R. at 143–44.

The facts presented at trial show that Seven Three was current in its payment of four of the fourteen vendors listed on the A/P Aging Summary.  *See* Seven Three Ex. MMM.  Seven Three was behind in payment to six vendors within 1–30 days, and, of the four remaining vendors to which Seven Three was considerably behind in payment (ranging from 30–60 days to over 90 days delinquent), testimony indicated that the delay was caused by problems with the quality or timing

9

of the delivery of goods ordered by Seven Three for which Seven Three was in the process of negotiating a resolution. *See* Hr'g Tr. 1-60:2 to 1-70:6. But the debts identified on the A/P Aging Summary represent only about $82,000 of the debts of the company. *See* Seven Three Ex. MMM.[9] The total amount of noncontingent, undisputed principal amounts owed under the Convertible Notes as of the Petition Date is $400,000.[10] With $36,000 in unpaid rent added, that total jumps to $436,000, or approximately 84% of the company's debt.[11]

The Court finds that the Petitioning Creditors have satisfied their burden by a preponderance of the evidence to show that Seven Three is not paying its noncontingent, undisputed debts as they become due as it is not paying the overwhelming majority of its aggregate debts.

**B.** **This Court Declines To Interpret § 303(i) To Allow Dismissal of an Involuntary Case Upon an Independent Finding of the Petitioning Creditors' Bad Faith in Filing the Case—Even When § 303's Statutory Requirements Have Been Met**

Seven Three urges this Court to adopt the Third Circuit's holding in *In re Forever Green Athletic Fields, Inc.*, 804 F.3d 328, 330 (3d Cir. 2015), and find that bad faith provides an independent basis for dismissing an involuntary petition—even after Petitioning Creditors have satisfied the statutory requirements for filing this involuntary petition found in §§ 303(b) and (h).

---

[9]    Based on the evidence presented at the Hearing regarding the contract-bottling agreement between Whodat Spirits, LLC and Seven Three, the Court will not consider Whodat Spirits, LLC to be a vendor or creditor of Seven Three for purposes of its § 303(h) analysis. *See* Hr'g Tr. 1-67:11 to 1-68:25; 2-7:19 to 2-9:25.

[10]    The Court includes the amount owed as of the Petition Date to the single Convertible Note holder who Seven Three paid in full post-petition. *See In re Acis Capital Mgmt., L.P.*, 584 B.R. at 143–44. The Court also includes the other seven noteholders who were owed principal amounts as of the Petition Date. *In re Smith*, 415 B.R. at 231 (citations omitted). Although the principal of Seven Three testified that he had negotiated forbearance agreements with those other noteholders, *see* Hr'g Tr. 2-106:1–18, that testimony was not credible and Seven Three presented no documentary evidence of those alleged agreements, nor did any of those Noteholders testify to corroborate the testimony. Therefore, the Court gives little, if any, weight to the testimony of the principal of Seven Three on that issue.

[11]    That percentage increases when interest owed under the Convertible Notes is added.

[ECF Doc. 137, at 2–9]. The statutory provisions in § 303 do not expressly require that involuntary petitions be filed in good faith or dismissed upon a finding of the petitioning creditors' bad faith. *See* 11 U.S.C. §§ 303(b), (h). "Bad faith" is only expressly contemplated in § 303(i), which allows, but does not require, a court to award damages upon a finding that any petitioner "filed the petition in bad faith"—but only **after** an involuntary case is dismissed "under this section other than on consent of all petitioners and the debtor." 11 U.S.C. § 303(i). Indeed, as observed in the Fourth Circuit, "a bankruptcy court may dismiss a ***defective*** involuntary petition filed in bad faith." *In re Carolina Constructors & Inv., LLC*, No. 20-02040, 2020 WL 3637900, at *6 (Bankr. D.S.C. June 26, 2020) (citing *Atlas Mach. & Iron Works, Inc. v Bethlehem Steel Corp.*, 986 F.2d 709, 716 (4th Cir. 1993)).

The Fifth Circuit has yet to articulate a position in agreement with the Third Circuit's *Forever Green Athletic Fields* holding that imposes an additional good-faith requirement on petitioning creditors in filing involuntary petitions under § 303. The Court acknowledges and is well aware of the judicially created standard of good faith in voluntary proceedings and its application in defining "cause" in considering whether to dismiss such cases pursuant to §§ 707(a), 1112(b), and 1307(c) of the Bankruptcy Code. *See Little Creek Dev. Co. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1071 (5th Cir. 1986) (citations omitted); *In re Lots by Murphy, Inc.*, 430 B.R. 431, 434 (Bankr. S.D. Tex. 2010) ("A finding of bad faith can be cause for dismissal of a Chapter 7 proceeding under section 707(a)."); *In re Mirant Corp.*, No. 03-46590, 2005 WL 2148362, at *6–10 (Bankr. N.D. Tex. Jan. 26, 2005) (evaluating the good faith of the debtor in filing its chapter 11 bankruptcy case when considering whether to dismiss the case for "cause"); *In re Ramji*, 166 B.R. 288, 290 (Bankr. S.D. Tex. 1993) ("Lack of good faith is sufficient grounds for dismissal of a case under Section 1307(c).").

11

But dismissal for "cause" is not provided as an option in § 303 as a basis for dismissing involuntary cases. "Cause" serves as a basis only in determining whether the posting of a bond is appropriate under § 303(e). In the absence of direct instruction from the Fifth Circuit, this Court agrees with other courts in this Circuit and finds that, given this Court's finding that the Petitioning Creditors have carried their burden under §§ 303(b) and (h) for filing the involuntary petition against Seven Three, consideration and a finding of bad faith would be inappropriate. *See In re Guiterrez*, No. 20-50129, 2020 WL 3720234, at *12 (Bankr. S.D. Miss. July 6, 2020); *In re On-Site Fuel Serv., Inc.*, No. 18-04196, 2019 WL 2252003, at *9 (Bankr. S.D. Miss. May 24, 2019); *In re Kennedy*, 504 B.R. 815, 823–24 (Bankr. S.D. Miss. 2014); *Aigner v. McMillan*, No. 11-47029, 2013 WL 2445042, at * 4 (Bankr. N.D. Tex. June 4, 2013). As explained by the court in *In re On-Site Fuel Services*, an argument that a bankruptcy court should dismiss an involuntary petition for bad faith even when the petitioning creditors satisfy § 303's requirements "is without merit because this Court lacks the authority to arbitrarily impose non-statutory requirements to the procedure for filing involuntary petitions as set forth in the Code." 2019 WL 2252003, at *9 (citing *Law v. Siegel*, 571 U.S. 415, 427 (2014)).

### C. Even If a "Good Faith" Requirement Is Imposed on § 303's Filing Requirements, the Court Finds the Petitioning Creditors Did Not File the Petition in Bad Faith

If this Court is required to consider bad faith as an independent basis for dismissal of an involuntary case, this Court will look to other courts' analysis of bad faith in the context of § 303(i)(2) to determine the legal standard for finding bad faith. Section 303(i)(2) allows a court, upon its dismissal of an involuntary petition, to render a judgment of proximate and punitive damages against any petitioning creditor who filed the petition in bad faith. "[W]ith respect to proximate and punitive damages, courts addressing the issue agree that '[t]here is a presumption

of good faith in favor of the petitioning creditor, and thus the alleged debtor has the burden of proving bad faith.'" *In re TRED Holdings, L.P.*, No. 10-40749, 2010 WL 3516171, at *7 (Bankr. E.D. Tex. Sept. 3, 2010) (quoting *In re John Richard Homes Bldg. Co.*, 291 B.R. 727, 729–30 (Bankr. E.D. Mich. 2003)); *see also In re Synergistic Techs., Inc.*, No. 07-31733, 2007 WL 2264700, at *6 (Bankr. N.D. Tex. Aug. 6, 2007) (citing cases and observing the consensus that a presumption of petitioning creditors' good faith in filing the petition exists and that the putative debtor must prove bad faith by a preponderance of the evidence). "Determining whether an involuntary petition was filed in bad faith requires the bankruptcy court to look at the 'totality of circumstances.'" *In re TRED Holdings, L.P.*, 2010 WL 3516171, at *7 (citations omitted).

"A determination of bad faith is generally predicated upon a finding that the petitioning creditor acted with wrongful motives, wrongful objectives, or both." *In re Kennedy*, 504 B.R. at 824 (citing *Aigner*, 2013 WL 2445042, at *4); *see also Subway Equip. Leasing Corp. v. Sims (In re Sims)*, 994 F.2d 210, 222 (5th Cir. 1993) (observing that, in the context of an involuntary bankruptcy case, evidence of a bad-faith filing would show that the filing "was 'motivated by ill will, malice or for the purpose of embarrassing or harassing the debtor[s]'" (quoting *In re W. Side Cmty. Hosp.*, 112 B.R. 243, 256 (Bankr. N.D. Ill. 1990))); *In re Synergistic Techs., Inc.*, 2007 WL 2264700, at *7 (finding that to determine bad faith in the filing of an involuntary petition, a court must "turn to the totality of the circumstances here—considering such things as *actions, motives and objectives* of the parties").

The evidence in this case revealed friction between Sal and Jeff regarding the ownership and control of Seven Three. No written operating agreement designating ownership of the company was ever executed by the pair. *See* Hr'g Tr. 1-42:19 to 1-49:7; 2-126:10 to 2-130:6; 2-149:12 to 2-159:5. Beginning in January 2019, Jeff filed a series of lawsuits in state court prior to

the filing of the involuntary petition.  In the first lawsuit, Jeff sued Sal and Seven Three, seeking a declaratory judgment that he owns 50% of Seven Three and "possesses final say over the operation of the business."  Ex. Seven Three B.  In March 2019, Jeff, on behalf of 301 North Claiborne, LLC, sued Seven Three to rescind the Lease.  *See* Ex. Seven Three C.  Finally, in October 2020, Jeff, on behalf of 301 North Claiborne, LLC, sued Seven Three again, this time seeking to terminate the Lease and evict Seven Three.  *See* Ex. Seven Three D.  All three of those lawsuits are still pending and are in their infancy stages.  *See* Hr'g Tr. 1-49:3 to 1-56:4; Hr'g Tr. 2-148:10 to 2:193:3.[12]

An additional lawsuit was filed in January 2020 by Petitioning Creditors Patrick Dubendorfer and Dr. Theresa Turla in state court against Seven Three to recover payment under their Convertible Notes; Sal filed a reconventional concursus action to deposit the amounts at issue in the registry of the state court pending resolution of a dispute between a third party (represented by Sal's law partner) and Dubendorfer regarding ownership of the Dubendorfer Convertible Note. *See* Ex. Seven Three YY.  That lawsuit is still in its early stages as well.  Importantly, none of the Petitioning Creditors/plaintiffs in any of the lawsuits—301 North Claiborne, LLC, Dr. Turla, or Dubendorfer—has received an adverse ruling that would foreclose their ability to recover from Seven Three.

Seven Three asserts that Jeff organized the Petitioning Creditors and orchestrated the filing of the involuntary petition to get a litigation advantage over Sal.  *See* Hr'g Tr. 1-55:21 to 1-56:5; Hr'g Tr. 2-193:4–14; Motion To Dismiss, at 1–2.  The immediate effect of the filing of the involuntary petition, however, was to stay all litigation in state court against Seven Three,

---

[12]     For example, Sal filed a *Declinatory Exception of Lis Pendens* in October 2020, notifying the state court of the relationship between the two suits between 301 North Claiborne, LLC and Seven Three and requesting that the later filed suit be dismissed.  *See* Ex. Seven Three D.  The state court had not ruled on that Exception at the time the involuntary petition was filed.  *See* Hr'g Tr. 1-120:15–19.

prohibiting Jeff, Dubendorfer, and Dr. Turla from prosecuting those cases against Seven Three. Much of the evidence presented by the parties focused on the merits of the state court lawsuits and Sal's business decisions in operating Seven Three.   But considering the totality of the circumstances, the evidence shows separate motiving factors and business reasons for initiating the involuntary petition apart from any animosity between Sal and Jeff.

Petitioning Creditor Dr. Turla, who struck the Court as a credible, direct, and no-nonsense witness, testified that she invested in the company because of her personal relationship with Sal, and always desired to be paid in full with interest under the Note.  *See* Hr'g Tr. 3-191:17; 3-196:10–15.[13]  But when the Maturity Date passed, she could never obtain timely information from Sal about the financial condition of the company or the timeline of repayment.  *See* Hr'g Tr. 3-191:12 to 193:23. She testified that she was optimistic about recovery under her Convertible Note after Sal filed the concursus action in state court because it meant that Seven Three would be forced to deposit amounts owed under the Convertible Notes in the state court registry pending resolution of the various claims, but became concerned when no funds were ever deposited.  *See* Hr'g Tr. 3-204:14–15.  Further, she testified that she became concerned that funds were being "bled out" of Seven Three when she read local articles detailing what she viewed as questionable business relationships among Seven Three (operated entirely by Sal with no Board of Directors), Sal's law partner and his outside business ventures, and former vendors of Seven Three.  *See* Hr'g Tr. 3-192:6 to 193:23.  In sum, Dr. Turla stated her motivation in filing the involuntary petition was to obtain transparency in the finances of Seven Three in the hope of salvaging the company's profitability so that it could pay its creditors.  *See* Hr'g Tr. 3-194:5–15.

---

[13]      Although the Court found Dr. Turla's claim to be subject to a bona fide dispute, thereby making her ineligible to qualify as a Petitioning Creditor under § 303(b)(1), [ECF Doc. 113], the Court nevertheless considers her testimony to the extent the Court must evaluate the alleged bad faith of the Petitioning Creditors in filing the involuntary Petition as an independent basis for dismissal.

Similarly, Petitioning Creditor Debra Levis, who this Court found to be a credible witness, testified that she also had difficulty for months getting information regarding her options for payment or conversion to equity under her late husband's Convertible Note once the Maturity Date had passed.  *See* Hr'g Tr. 3-147:10 to 3-148:9.  Although Debra Levis testified that she began talking with Jeff regarding her options under the Convertible Note approximately six months after the Maturity Date had passed, *see* Hr'g Tr. 3-147:12–13, the evidence showed no bad-faith collusion between Debra Levis and Jeff regarding the filing of the involuntary Petition.  Ms. Levis testified that she and her late husband, Robert, invested in Seven Three because of their long-standing relationship with Jeff; she spoke with Jeff regarding her options under the Note because he "was always our contact person for the investment" and "because Mr. Bivalacqua hasn't answered my inquiries."  Hr'g Tr. 3-147:23 & 3-148:8–9.

Again, the majority of Jeff's testimony focused on the merits of the state court litigation between Sal and Jeff over the ownership of Seven Three and the Lease with 301 North Claiborne, LLC.  But the filing of the involuntary stayed all of that litigation.  Although the testimony of Cher Levis revealed that she had been childhood friends with Jeff, nothing in her testimony suggested bad faith on her part in deciding to file the involuntary Petition against Seven Three.  *See* Hr'g Tr. 3-177:8 to 3-185:18.  On the whole, the evidence did not reflect bad faith on the part of 301 North Claiborne, LLC in filing the involuntary petition, but, rather, the need and desire for transparency regarding Seven Three's operations and financing.  *See* Hr'g Tr. 3-41:18–21; 2-145:1 to 3-58:25.

Thus, even if this Court were authorized to dismiss this properly filed involuntary case based on the bad faith of the Petitioning Creditors in filing the petition, after considering the totality of the circumstances, the Court finds that Seven Three has not satisfied its burden to overcome the presumption that the petition was filed in good faith.

16

**D.      The Court Declines To Abstain and Dismiss the Involuntary Petition Pursuant to § 305(a)(1)**

Finally, Seven Three asserts that this Court should exercise its discretion to abstain and dismiss the involuntary petition under § 305 of the Bankruptcy Code, asserting that litigation between Seven Three and its landlord and the Convertible Noteholders involve state law claims and should be allowed to continue in state court. *See* Motion To Dismiss, ¶¶ 46–51. Section 305 provides that a court may dismiss or suspend a bankruptcy case at any time if "the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1). But "[g]ranting an abstention motion pursuant to § 305(a)(1) requires more than a simple balancing of harm to the debtor and creditors; rather, the interests of both the debtor and its creditors must be served by granting the requested relief." *In re Smith*, 415 B.R. 222, 238 (Bankr. N.D. Tex. 2009). Indeed, "[c]ourts construing section 305(a)(1) of the Bankruptcy Code have found that abstention in a properly filed bankruptcy case is an **extraordinary remedy**." *In re Acis Capital Mgmt., L.P.*, 584 B.R. at 145.

Here, Seven Three bears the burden of showing that dismissal of the involuntary case pursuant to § 305 benefits it and its creditors. *See id.*; *In re Smith*, 415 B.R. at 239. "Courts must look to the individual facts of each case to determine whether abstention is appropriate," but consider the following factors:

(1) the economy and efficiency of administration;

(2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court;

(3) whether federal proceedings are necessary to reach a just and equitable solution;

(4) whether there is an alternative means of achieving an equitable distribution of assets;

(5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;

(6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and

(7) the purpose for which bankruptcy jurisdiction has been sought.

*In re Acis Capital Mgmt., L.P.*, 584 B.R. at 145; *see also In re Guiterrez*, 2020 WL 3720234, at *12 (Bankr. S.D. Miss. July 6, 2020); *In re Kennedy*, 504 B.R. 815, 828 (Bankr. S.D. Miss. 2014). "While all factors are considered, not all are given equal weight in every case and the court should not conduct a strict balancing." *In re Acis Capital Mgmt., L.P.*, 584 B.R. at 146. For the reasons that follow, the Court finds that Seven Three has not satisfied its burden to invoke abstention under § 305.

Seven Three urges the Court to allow the litigation initiated by Jeff against Sal and Seven Three in January 2019, as well as the suits that followed concerning the Lease between 301 North Claiborne and Seven Three and the lawsuit initiated by two Convertible Noteholders against Seven Three, to conclude in state court rather than handle those disputes in the context of a bankruptcy proceeding. Seven Three asserts that it has already contributed "effort and expense . . . over three years to prevail in the [state court] litigation," Motion To Dismiss, ¶ 47; nevertheless, each of those lawsuits are still in early stages, *see* Hr'g Tr. 1-25:17 to 1-124:6; 2-50:9 to 2-140:8; 2-149:19 to 2-270:13; 3-6:21 to 3-55:23.

Although allowing those state court cases to proceed to conclusion (presumably over several more years) may resolve the claims of those particular litigants, this Court has found that Seven Three is generally not paying its debts to other creditors of the estate as those debts become due. The conclusion of the various pending state court lawsuits would affect only a few creditors; thus, any resolution of those claims would provide merely a piecemeal solution to Seven Three, and would entirely exclude other creditors who are owed significant amounts by Seven Three from resolving their claims. Without expending considerable resources to file and prosecute their own

lawsuits, other creditors, including eight other Convertible Noteholders who are owed significant sums under their Notes, have no other forum to seek a resolution with Seven Three. For those reasons, the Court finds that the factors considering economy and efficiency of administration, availability of another forum, alternate means of achieving equitable distribution of assets, and whether non-federal insolvency proceedings have been initiated each cut in favor of maintaining the involuntary case in the best interests of both Seven Three and its creditors.

Regarding the possibility that an out-of-court resolution exists, the evidence presented at the Hearing indicated that Sal had provided little information to the Convertible Noteholders regarding the financial condition of the company, no timely explanations for the lack of repayment under the Notes, and few realistic or acceptable timelines and sources for repayment. *See* Hr'g Tr. 2-193:7–14; 3-147:10–13; 3-148:5–9; 3-191:12 to 3-193:23. The testimony reflected creditors' desire for transparency regarding the company's finances and a forum for resolution of the company's obligations to its creditors. *See, e.g.*, Hr'g Tr. 3-194:5–10. Sal testified that he is willing to make offers to certain Noteholders if the involuntary case is dismissed—and did make a post-petition settlement offer to Debra and Cher Levis with a request that they "drop the dispute." Hr'g Tr. 1-101:5–13; 3-161:2 to 3:166:2; Joint Ex. 1 (Post-trial submission of correspondence relating to post-petition settlement offer to Cher and Debra Levis). But no evidence was presented as to Seven Three's or Sal's personal wherewithal to make such offers. This company continues to operate and might have the capability to reorganize its debts and move ahead as a going concern using the bankruptcy process. But based on the history of the parties' relationship thus far, the Court is not convinced that any purpose will be served in dismissing the involuntary case to allow the parties to pursue settlement of their individual disputes. Of course, nothing prevents the parties

from pursuing settlement discussions in the context of formulating a plan of reorganization in this bankruptcy case.

Finally, Seven Three alleges that the filing of the involuntary petition was orchestrated by Jeff as another attempt to gain control of the company. *See* Hr'g Tr. 1-55:21 to 1-56:5; Hr'g Tr. 2-193:4–14; Motion To Dismiss, at 1–2. But "[t]his Court cannot ignore the availability of a remedy provided by the Code if all other requirements have been met." *In re Gutierrez*, 2020 WL 3720234, at *13. And as discussed above, even if this Court were tasked with evaluating bad faith as an independent basis for dismissing an involuntary even when the statutory requirements for filing have been met, this Court has found that the Petitioning Creditors did not act in bad faith, but, rather, demonstrated separate motiving factors and business reasons for initiating the involuntary petition apart from the acrimony between Sal and Jeff.

Therefore, the Court finds that the factors examining the needs for federal proceedings and the purpose for bankruptcy jurisdiction weigh in favor of maintaining this involuntary case in the best interests of Seven Three and its creditors.

## CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that the *Motion of Seven Three Distilling Company, LLC for (I) Dismissal of the Involuntary Petition for Failure To State a Claim for Relief; (II) or, Alternatively, Dismissal on Abstention Under § 305; and (III) Other Relief* is DENIED in its entirety.

**IT IS FURTHER ORDERED** that this Court will issue an Order of Relief forthwith.

**IT IS FURTHER ORDERED** that the *Motion by Seven Three Distilling Co. LLC for Bond Pursuant to Section 303(e) of the Bankruptcy Code* is DENIED AS MOOT.

New Orleans, Louisiana, August 4, 2021.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE