UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 21-10219 |
| | § | |
| SEVEN THREE DISTILLING | § | CHAPTER 11 |
| COMPANY, LLC, | § | |
| | § | |
| DEBTOR. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the *First Interim Application of Lugenbuhl, Wheaton, Peck, Rankin & Hubbard for Allowance of Fees and Reimbursement of Expenses* (the "Fee Application"), [ECF Doc. 307], filed by Lugenbuhl, Wheaton, Peck, Rankin & Hubbard ("Lugenbuhl"), and the opposition to the Fee Application filed by creditor 301 North Claiborne, LLC ("301NC"), [ECF Doc. 320]. After considering the pleadings and arguments of counsel, the Court granted the Fee Application in part, awarding Lugenbuhl $48,087.50 in fees and $627.56 in reimbursable expenses for services rendered to Seven Three Distilling Company, LLC ("Seven Three" or the "Debtor") after an Order for Relief was entered in the case on August 5, 2021. [ECF Doc. 328]. The Court accepted further briefing on whether Lugenbuhl is entitled to payment of fees for services incurred during the "gap" period as an allowed administrative expense claim under 11 U.S.C. §§ 330(a)(1)(B) and 503(b)(2) or as an allowed priority unsecured claim under 11 U.S.C. § 502(f) and took the remainder of the Fee Application under submission. [ECF Docs. 328, 334 & 335].

For the reasons discussed below, the Court **DENIES** the remaining request in the Fee Application for allowance of an administrative expense claim or priority unsecured claim for $41,726.14 in fees and $2,379.00 in reimbursable expenses for services provided during the "gap" period, finding no statutory basis that would entitle Lugenbuhl to that relief. Rather, the Court allows Lugenbuhl a general unsecured claim in the total amount of $44,105.14.

## JURISDICTION AND VENUE

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. § 1334. The matter presently before the Court constitutes a core proceeding that this Court may hear and determine on a final basis under 28 U.S.C. § 157(b)(2)(B). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

On February 22, 2021, several petitioning creditors, including 301NC, filed an involuntary chapter 11 bankruptcy petition against Seven Three. [ECF Doc. 1]. Rather than converting voluntarily to chapter 11, which was one option, Seven Three chose to retain Lugenbuhl to contest the involuntary petition. Lugenbuhl filed a motion to dismiss the involuntary case and a motion to require the petitioning creditors to file a bond under 11 U.S.C. § 303(e), [ECF Docs. 6 & 7], and thereafter the parties engaged in extensive discovery and motion practice. After resolving cross-motions for summary judgment, [ECF Doc. 113], the Court held a three-day evidentiary hearing and accepted post-trial briefing, [ECF Docs. 131, 136 & 137]. On August 4, 2021, the Court denied Seven Three's motion to dismiss and, on August 5, 2021, the Court entered an Order for Relief pursuant to 11 U.S.C. § 303(h). [ECF Docs. 138 & 139].

Through the outstanding portion of the Fee Application, Lugenbuhl requests $41,726.14 in fees and $2,379.00 in reimbursable expenses incurred prior to the entry of the Order for Relief. *See* Fee Application, ¶ 8 & Ex. B. Based upon a comparison of the disclosures made in Lugenbuhl's employment application filed post-Order for Relief, [ECF Doc. 151], and the portion of the Fee Application requesting fees and expenses for services provided during the "gap" period, it appears that Seven Three incurred approximately $111,000.00 in legal fees and expenses

associated with challenging the involuntary bankruptcy petition and paid $69,499.62 to Lugenbuhl during the "gap" period.

## DISCUSSION

### A. Lugenbuhl Is Not Entitled to an Allowed Administrative Expense Claim for Unpaid Fees for Services Rendered Prior to the Entry of the Order for Relief.

The Bankruptcy Code protects administrative expenses incurred during the course of bankruptcy proceedings by a grant of first priority status in the distribution of the estate. *See* 11 U.S.C. §§ 503 & 507(a)(1). But § 503(b) expressly excludes any "gap" claims, that is, those claims defined in § 502(f) as "arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee and the order for relief." Thus, Lugenbuhl's "gap" claim cannot be allowed as an administrative expense claim under 11 U.S.C. § 507 as would reasonable compensation for actual, necessary services incurred post-Order for Relief. *See* 11 U.S.C. § 507(a)(2) (incorporating 11 U.S.C. §§ 503(b) & 502(f)); *In re Mfr.'s Supply Co.*, 132 B.R. 127, 129 (Bankr. N.D. Ohio 1991).

### B. Lugenbuhl Is Not Entitled to an Allowed Priority Unsecured Claim for Unpaid Fees for Services Rendered Prior to the Entry of the Order for Relief.

The filing of an involuntary case creates a bankruptcy estate and triggers the imposition of the automatic stay under § 362(a) of the Bankruptcy Code just as in a voluntary bankruptcy case filing. *See, e.g.*, *NLT Computer Servs. Corp. v. Capital Computer Sys., Inc.*, 755 F.2d 1253, 1258 (6th Cir. 1985); *In re Edwin A. Epstein, Jr. Operating Co., Inc.*, 314 B.R. 591, 594 (Bankr. S.D. Tex. 2004). But until an Order for Relief is entered, the limitations on the putative debtor's use of property found in § 363 of the Bankruptcy Code do not apply. *See* 11 U.S.C. § 303(f) ("Notwithstanding section 363 of this title, except to the extent that the court orders otherwise, and until an order for relief in the case, any business of the debtor may continue to operate, and the

debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced."). "The rationale for allowing the debtor to operate during the involuntary gap period is that prior to the entry of an order for relief, the subject of an involuntary petition should not be adversely affected by the case." *Consolidated Partners Inv. Co. v. Lake*, 152 B.R. 485, 490 (Bankr. N.D. Ohio 1993) (citation omitted).[1]

Section 502(f) of the Bankruptcy Code treats claims arising in the "gap" period "as if such claim had arisen before the date of the filing of the petition." In turn, § 507(a) grants unsecured "gap" claims priority status, allowing payment of those claims after payment of domestic support obligations and administrative expense claims. *See* 11 U.S.C. § 507(a)(3). As defined by the Bankruptcy Code, however, "gap" claims are those "arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee and the order for relief." 11 U.S.C. § 502(f). Thus, § 502(f) "is intended

---

[1] But the inclusion of the phrase "except to the extent that the court orders otherwise" in § 303(f) indicates that "if the debtor is acting in a manner that suggests that the assets of the estate will be disposed of to the detriment of creditors, the court can limit the debtor's powers under section 303(f)." 2 COLLIER ON BANKRUPTCY ¶ 303.23[1] (Richard Levin & Henry J. Sommer eds., 16th ed.); *see also Villareal v. N.Y. Marine & Gen. Ins. Co. (In re OGA Charters, LLC)*, 554 B.R. 415, 427–33 (Bankr. S.D. Tex. 2016). Further, § 549 of the Bankruptcy Code identifies the types of transfers that may be avoided once an Order for Relief is entered and those that are protected from claw-back. Pursuant to that section, a trustee may avoid a post-petition transfer of estate property "that is authorized only under section 303(f) or 542(c)"—which includes transfers made by an involuntary debtor during the gap period—or one "that is not authorized under this title or by the court." 11 U.S.C. § 549(a). But § 549(b) specifically addresses transfers made by an involuntary debtor during the gap period and states:

> In an involuntary case, the trustee may not avoid under subsection (a) of this section a transfer made after the commencement of such case but before the order for relief to the extent any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, is given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.

11 U.S.C. § 549(b). In other words, "section 549(b) protects from avoidance transfers made by an alleged debtor during the involuntary gap to the extent that they were made for value given after the commencement of the case in exchange for the transfer." 2 COLLIER ON BANKRUPTCY ¶ 303.24[2] (Richard Levin & Henry J. Sommer eds., 16th ed.).

to protect the creditors who deal with an involuntary debtor during the gap period, such as lessors, trade creditors and similar parties, consistent with section 303(f)'s specific authority allowing an involuntary debtor to conduct its business in an ordinary manner while its ultimate status is adjudicated." *In re Mfr.'s Supply Co.,* 132 B.R. at 129 (citing S. Rep. No. 95-989, 95th Cong., 2d Sess. 65, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5851). Legal work commenced to challenge the filing of an involuntary bankruptcy petition, however, is not a debt arising in the ordinary course of the debtor's business or financial affairs. *See id*. at 129–30. The Court thus finds that legal work performed by Lugenbuhl during the "gap" period did not arise in the ordinary course of Seven Three's business and cannot qualify for priority treatment under §§ 502(f) and 507(a)(3).

## CONCLUSION

Lugenbuhl received $69,499.62 in payment pre-Order for Relief from then-putative debtor Seven Three for services rendered during the "gap" period. Those voluntary payments are within the language and intent of § 303(f), which permits a debtor to use property in an involuntary case, subject to limitations in § 549. *See, e.g.*, *In re McNar, Inc.*, 116 B.R. 746, 749 (Bankr. S.D. Cal. 1990); *In re Shah Int'l, Inc.*, 94 B.R. 136, 138–39 (Bankr. E.D. Wis. 1988).

But this Court finds no basis in the Bankruptcy Code that would give priority status to counsel for unpaid pre-Order for Relief invoices related to an unsuccessful challenge to an involuntary bankruptcy petition. *Cf.* 11 U.S.C. § 303(i) (allowing reasonable attorneys' fees and costs against petitioning creditors and in favor of debtor for successfully defending against the filing of an involuntary petition); 11 U.S.C. § 503(b)(3)(A) & 503(b)(4) (allowing actual, necessary expenses and reasonable attorneys' fees to petitioning creditors for filing and prosecuting an involuntary bankruptcy petition). If Seven Three's challenge to the involuntary bankruptcy petition had been successful, then Lugenbuhl could have been compensated for unpaid

services under § 303(i). But as it is, the Court entered an Order for Relief and Seven Three proceeded in bankruptcy. Thus, the Court concludes that Lugenbuhl's "gap" period services were provided by counsel on what might be described as a contingency-fee basis and Lugenbuhl now holds nothing more than a general unsecured claim for a total of $44,105.14.

**SO ORDERED.**

New Orleans, Louisiana, this 24th day of August, 2022.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE