**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: | § § | CASE NO: 21-10219 |
| SEVEN THREE DISTILLING COMPANY, LLC | § § § § | CHAPTER 11 |
| DEBTOR. | § § § | SECTION A |

**MEMORANDUM OPINION AND ORDER**

On June 26, 2022, the Court held an evidentiary hearing to resolve (i) the *Motion for Allowance and Payment of Administrative Expense Claim* (the "Motion"), [ECF Doc. 497], filed by 301 North Claiborne, LLC ("301NC"), and the objections to the Motion filed by the Office of the United States Trustee ("UST"), [ECF Doc. 516], and the Liquidation Trustee, [ECF Doc. 518]; as well as (ii) the *Objection to Proof of Claim by 301 North Claiborne, LLC (Claim No. 9)* (the "Claim Objection"), [ECF Doc. 524], filed by the Liquidation Trustee. The same issues are at the heart of both the Motion and the Claim Objection.

At the evidentiary hearing, the Court heard testimony from Jeff Rogers, sole member-manager of 301NC, and admitted into evidence 301NC Exhibits A, D, F, G, K, O, P, and Q. [ECF Doc. 592]. The parties read into the record certain factual stipulations and reduced them to writing (the "Stipulations"). [ECF Doc. 593]. Upon the close of evidence, the Court took the matter under submission.

For the reasons below, the Court **DENIES** the Motion and **SUSTAINS IN PART** and **DENIES IN PART** the Claim Objection.

## JURISDICTION AND VENUE

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. § 1334. The matters presently before the Court constitute core proceedings that this Court may hear and determine on a final basis under 28 U.S.C. § 157(b)(2)(B). The venue of the Debtor's chapter 11 case is proper under 28 U.S.C. §§ 1408 and 1409(a).

## RELEVANT PROCEDURAL BACKGROUND

On February 22, 2021, certain creditors including 301NC filed an involuntary chapter 11 bankruptcy petition against Seven Three Distilling Company, LLC ("Seven Three" or the "Debtor"). [ECF Doc. 1]. Seven Three chose to contest the involuntary petition by filing motions to dismiss the involuntary case and to require the petitioning creditors to file a bond under 11 U.S.C. § 303(e). [ECF Docs. 6 & 7]. Thereafter, the parties engaged in extensive discovery and motion practice. After resolving cross-motions for partial summary judgment, [ECF Doc. 113], the Court held a three-day evidentiary hearing and accepted post-trial briefing, [ECF Docs. 131, 136 & 137]. On August 4, 2021, the Court denied Seven Three's motion to dismiss and, on August 5, 2021, the Court entered an Order for Relief pursuant to 11 U.S.C. § 303(h). [ECF Docs. 138 & 139].

301NC is the owner of developed property located at 301 N. Claiborne Ave., New Orleans, Louisiana (the "Property"). Pursuant to a written lease executed by 301NC and Seven Three on January 1, 2016 (the "Lease"), Seven Three operated its distilling and bottling business on the Property. On November 15, 2021, 301NC filed Proof of Claim No. 9 in the amount of $183,082.67, asserting general unsecured and priority unsecured claims arising from the Lease. 301NC attached the following itemization to its Proof of Claim:

2

| | |
|---|---|
| Past Due Rent: | $36,000.00 |
| Rent Deficiency (prepetition):* | $15,166.50 (2 months) |
| Rent Deficiency (postpetition):* | $68,249.25 (9 months) |
| Taxes: | $36,434.42 |
| Prepetition Attorney's Fees: | $27,232.50 |
| TOTAL | $183,082.67 |

*Rent deficiency based on fact that Debtor obligated to pay fair market value rent beginning January 1, 2021, rather than original rental amount agreed to for the original term of the lease.

Proof of Claim No. 9, Addendum.

On March 31, 2022, this Court confirmed the Debtor's fourth amended plan (the "Plan"), which established an auction process for the sale of the membership interests in the Debtor. [ECF Doc. 454]. A limited liability company recently formed by the principal of 301NC prevailed at the auction and purchased the membership interests in the Debtor. [ECF Doc. 442]. The Plan created a liquidation trust to hold the proceeds of that sale, plus all remaining assets of the Debtor including reserved causes of action. [ECF Doc. 449]. The Plan and its supporting documents appointed a Liquidation Trustee who would liquidate trust assets, defend claims filed against the estate, and make distributions under the Plan. *See id*. Pursuant to the Plan, the Lease between the Debtor and 301NC was rejected as of the effective date of the Plan, or April 4, 2022. *See id*. On May 26, 2022, the Liquidating Trustee filed the Claim Objection to 301NC's Proof of Claim No. 9, challenging 301NC's claims for rent, ad valorem taxes, and attorneys' fees based on her reading of the express terms of the Lease. [ECF Doc. 524].

On April 29, 2022, 301NC filed the Motion, seeking an allowed administrative expense claim under either § 365(d)(3) or § 503(b)(1) of the Bankruptcy Code for alleged post-petition, pre-rejection rent shortfalls. 301NC asserts that, although the Debtor paid $4,500 per month in rent for use of the Property during its bankruptcy case, the Debtor was obligated under the Lease to pay "fair market value" rent, which 301NC now calculates to be in the total amount of $121,332.

*See* Motion, ¶ 14. 301NC also seeks an allowed administrative expense claim for $11,579.01 for unpaid post-petition ad valorem taxes. The UST objects to the Motion, asserting in part that 301NC cannot recover under § 365(d)(3) which applies only to unexpired leases of nonresidential property because 301NC acknowledges in its Motion that the Lease terminated prepetition. [ECF Doc. 516, ¶ 9]. The Liquidation Trustee's objection to the Motion asserts that, because the Debtor did not exercise its option to renew the Lease, the Debtor was not required to pay "fair market value" rent; at the same time, the Liquidation Trustee asserts that the Lease was reconducted under Louisiana law and, therefore, the terms of Lease require ad valorem taxes to be paid by 301NC. [ECF Doc. 518, ¶¶ 9–11].

At the hearing, 301NC introduced extrinsic evidence of parties' intentions regarding the amount of rent and payment of ad valorem taxes under the Lease. *See* 301NC Exs. D, F & G; Hr'g Tr. 10:12–53 (June 26, 2022).

## FINDINGS OF FACT[1]

Seven Three and 301NC entered into the Lease on January 1, 2016. *See* Lease, at 1 (301NC Ex. O).[2] The Lease had an initial "Lease Term" of five years, through December 31, 2020. *See* Lease, § 1.1(E). The Lease abated payment of rent between the months of January 1, 2016, and June 30, 2016; for the remaining months of the Lease Term, Seven Three was required to pay $4,500 per month. *See* Lease, § 1.1(F). The Lease granted Seven Three "the right and option to extend this Lease for seven (7) additional renewal terms, each of which shall be for an

---

[1] These findings of fact and conclusions of law constitute the Court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. To the extent that any of the following findings of fact are determined to be conclusions of law, they are adopted and shall be construed and deemed conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted and shall be construed and deemed as findings of fact.

[2] The copy of the Lease attached to 301NC's Proof of Claim is illegible. *See* 301NC Ex. A. The Court reviewed the legible copy of the Lease attached to 301NC Ex. O.

4

additional five (5) year period ('Renewal Term') for a maximum lease term of forty (40) years." Lease, § 1.1(E). To exercise the right to extend the initial Lease Term, Seven Three had to provide written notice of its intent to extend "at least no sooner than 270 days and no later than 180 days before the date of termination of the then current term," or December 31, 2020. *Id*. If Seven Three exercised that option, the Lease required the monthly rent for the Renewal Term beginning in January 2021 to be equal to "fair market value," which would be "decided by averaging the suggested rental value of two independent real estate [firms]." Lease, § 1.1(F). The parties here have stipulated that fair-market rent for a Renewal Term beginning in January 2021 is $12,083.25 per month. *See* Stipulations, ¶ 1.

Among other things, the Lease required 301NC as the landlord to be responsible for payment of property taxes:

> Property Taxes. Landlord agrees to be responsible for and to pay promptly when due any ad valorem taxes or other taxes (use, sales, service, or otherwise) upon such parcel of land and improvements which comprises the Building of which the Leased Premises are a part. The parties agree that the Leased Premises represents fifty percent [50%] of the total real property located at 301 N. Claiborne for purposes of this provision.

Lease, § 9.6; *see also* Lease, § 1.1(H) ("TAXES: Landlord shall pay all real estate taxes related to the Leased Premises."). 301NC as landlord paid all ad valorem taxes for the Leased Premises for the years 2016 to 2022. *See* Stipulations, ¶ 4.

The Lease also identifies default remedies. In the event of a default by Seven Three, the Lease provides in pertinent part:

> If the Landlord at any time, by reason of [Tenant's] default or breach, is compelled or elects to pay any sum of money, or incurs any expenses, including reasonable attorneys' fees, in instituting, prosecuting or defending any action to enforce or protect Landlord's rights hereunder, **and is successful in such proceeding**, such reasonable sums or expenses, together with costs shall be deemed to be additional rent hereunder and shall be due from the Tenant to the Landlord on the same terms as provided for the payment of rent hereunder.

5

Lease, § 11.2(A) (emphasis added). Section 11.5 further addressed recovery of attorneys' fees by either party:

> If either party shall at anytime [*sic*] be in default hereunder, and if the other party shall deem it necessary to engage attorneys to enforce its rights hereunder, then the party in default will reimburse the other party for the reasonable expenses incurred thereby, including but not limited to court costs and reasonable attorneys' fees. These fees and costs will be due without question if and when a judgment or court order shall be obtained confirming or declaring that such party has committed an event or act of default under this Lease.

Lease, § 11.5.

Lastly, the Lease contained the following merger clause:

> <u>Entire and Binding Agreement</u>. This Building Lease contains all of the agreements between the parties hereto and it may not be modified in any manner other than by agreement in writing signed by all the parties hereto or their successors in interest. The Terms, covenants and conditions contained herein shall inure to the benefit of and be binding upon Landlord and Tenant and their respective successors and assigns.

Lease, § 12.8.

Seven Three never exercised its option to renew the initial Lease Term and the Lease expired by its terms on December 31, 2020. *See* Stipulations, ¶ 3. On or about September 28, 2020, after the time in which Seven Three was required to exercise its option to renew the Lease, but before the Lease expired, 301NC filed a petition in state court seeking to terminate the Lease, to evict Seven Three, and to recoup damages in the form of unpaid rent of $4,500 per month between November 2017 and June 2018 (the "<u>Eviction Action</u>"). *See* 301NC Ex. O. But on February 22, 2021, 301NC and the other petitioning creditors filed the involuntary bankruptcy petition against Seven Three; thus, the lawsuit filed against Seven Three in state court by 301NC was stayed.

After the Lease expired on December 31, 2020, Seven Three paid—and 301NC accepted—$4,500 per month to 301NC for the January and February 2021 rent. *See* Stipulations, ¶ 2. Seven Three operated its business on the Property during its bankruptcy case until the sale of its membership interests and confirmation of its liquidating plan. During that time, it paid—and 301NC accepted—monthly rent in the amount of $4,500 through and including March 1, 2022. *See* Stipulations, ¶ 2.

## CONCLUSIONS OF LAW

To resolve the dispute here, the Court must determine the landlord-lessee relationship that existed between the parties both before and after the Lease expired on December 31, 2020.

### A. Because the Lease Was Not Renewed, 301NC Cannot Collect "Fair Market Value" Rent, Reimbursement of Ad Valorem Taxes, or Prepetition Attorneys' Fees.

The fact that Seven Three declined to exercise its right to renew the Lease pursuant to § 1.1(E) of the Lease is not disputed. *See* Stipulations, ¶ 3. The parties agree that the Lease was not renewed and expired by its terms on December 31, 2020. *See id*. Nevertheless, 301NC's Proof of Claim requests two months of "fair market value" rent beginning January 1, 2021 and nine months of post-petition "fair market value" rent, as well as reimbursement of ad valorem taxes paid by 301NC over the term of the Lease and prepetition attorneys' fees presumably for filing the Eviction Action—all pursuant to the terms of the Lease. 301NC relies on extrinsic evidence regarding the intentions of the parties under the Lease to justify those requests. But long-held rules of contractual interpretation prohibit the Court from considering that evidence here.

"A court's overriding question when interpreting a contract is determining the parties' intent to give effect to their intentions." *In re Northshore Offshore Grp., LLC*, 2018 WL 5880949, at *5 (Bankr. S.D. Tex. Nov. 5, 2018) (citing *Reliant Energy Servs., Inc. v. Enron Can. Corp.*, 349

7

F.3d 816, 822 (5th Cir. 2003)). "To determine intent, [courts] look to the plain language of the contract, its commercial context, and its purposes." *Reliant Energy Servs., Inc.*, 349 F.3d at 822 (citing *Pennzoil Co. v. FERC*, 645 F.2d 360, 388 (5th Cir. 1981)). Contract interpretation begins by looking to the "four corners" of the contract, followed by consideration of extrinsic evidence only if the contract is ambiguous. *Dean v. City of Shreveport*, 438 F.3d 448, 460 (5th Cir. 2006); *see also Reliant Energy Servs., Inc.,* 349 F.3d at 822 ("When a contract is expressed in unambiguous language, its terms will be given their plain meaning and will be enforced as written." (citation omitted)). Indeed, "[w]hen the words of a contract are clear and unambiguous and lead to no absurd consequences, the Court will discern the contract's meaning and the parties['] intent within the four corners of the document." *Pellerin Constr., Inc. v. Witco Corp.*, 169 F. Supp. 2d 568, 578 (E.D. La. 2001) (citing La. Civ. Code arts. 1848, 2046).

A contract "is ambiguous when it is reasonably susceptible to more than one meaning, in light of surrounding circumstances and established rules of construction." *Dean*, 438 F.3d at 460–61 (quoting *N. Shore Lab. Corp. v. Cohen*, 721 F.2d 514, 519 (5th Cir. 1983)). "The mere fact that the parties may disagree on the meaning of a contractual provision is not enough to constitute ambiguity." *Reliant Energy Servs., Inc.*, 349 F.3d at 822. And "a contract should be interpreted as to give meaning to all of its terms—presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous." *Transnational Learning Cmty. at Galveston, Inc. v. U.S. Office of Pers. Mgmt.*, 220 F.3d 427, 431 (5th Cir. 2000).

Reading the plain language of the Lease and interpreting the Lease as a whole, the Court finds that the Lease unambiguously details the parties' intentions regarding the rent to be paid, the payment of ad valorem taxes, and access to default remedies. First, the Lease is unambiguous in defining the rent structure under the Lease and provides that zero rent is due for the first six months

8

of the Lease and rent of $4,500 per month is due for the months of June 2016 through December 2020. *See* Lease, § 1.1(F). And the Lease is clear regarding "Renewal Term Rent": "The Montly [*sic*] Rent for the Renwal [*sic*] Term, if selected, beginning January 1, 2021 shall be fair market value." *See id*. Because the Lease was not renewed, 301NC may not assess rent at the "fair market value" rate.

The Court also finds that the clear, unambiguous language of the Lease requires 301NC as the landlord to pay ad valorem taxes. *See* Lease, §§ H, 9.6 & 12.8. The Court further finds that the plain language of the Lease prohibits 301NC from recovering reasonable attorneys' fees in the absence of a judgment or court order issued in 301NC's favor and/or declaring Seven Three to be in default under the Lease. *See* Lease, §§ 11.2(A) & 11.5. 301NC filed the Eviction Action, but that action was stayed as a result of the involuntary petition filed against Seven Three. Because 301NC did not obtain a judgment in the Eviction Action, it cannot recover attorneys' fees under the Lease.

Because the text of the Lease is unambiguous, this Court is prohibited from looking to parol evidence to determine the parties' intent. *See Abshire v. Vermilion Parish Sch. Bd.*, 848 So. 2d 552, 555 n.5 (La. 2003) ("Meaning and intent of parties to a written instrument is ordinarily determined from instrument's four corners and extrinsic evidence is inadmissible either to explain or to contradict instrument's terms." (citation omitted)).

**B. The Lease Between 301NC and Seven Three Was Not Reconducted Upon Its Expiration on December 31, 2020.**

Under the Civil Code, "legal reconduction takes place when a fixed-term lease expires and the lessee without opposition continues to occupy the premises for more than a week." *Governor Claiborne Apartments, Inc. v. Attaldo*, 235 So. 2d 574, 576 (La. 1970); *see also* LA. CIV. CODE art. 2721. "The effect of such a [reconduction] is not to constitute a new lease

9

each month or even to renew the old one, but rather to continue the original lease." *Becker & Assoc., Inc. v. Lou–Ark Equip. Rentals Co.,* 331 So. 2d 474, 477 (La. 1976). The reconducted lease continues "under the same terms and conditions except that the fixed term or period of duration in the old lease is voided and the reconducted lease is considered to be by the month." *Attaldo*, 235 So. 2d. at 576.

But "[e]ither party to a lease can prevent reconduction 'through a clear manifestation of a contrary intent.'" *E. Jefferson Med. Plaza, LLC v. Jefferson Parish Hosp. Dist. No. 2*, No. 18-5740, 2019 WL 1407011, at *5 (E.D. La. Mar. 28, 2019) (quoting LA. CIV. CODE art. 2721 cmt. d). Indeed, "Louisiana jurisprudence has long recognized . . . that the Civil Code articles providing for reconduction have no application whatever when either party has clearly announced [its] intention not to renew the lease on the same terms." *Id*. (quoting LA. CIV. CODE. art. 2721 cmt. d). Seeking judicial termination of a lease and eviction of the lessee is a clear manifestation of a contrary intent not to renew a lease. *See Waller Oil Co. v. Brown*, 528 So. 2d 584, 586 (La. Ct. App. 1998) (citations omitted). Here, Seven Three declined to exercise its option to renew the Lease pursuant to the method and timeframe required under the Lease. And prior to the expiration of the Lease, 301NC filed the Eviction Action seeking to terminate the Lease and evict Seven Three. Through that filing, 301NC took an affirmative contrary step indicating that it did not intend to allow Seven Three to renew the Lease on the same terms, thereby foreclosing the possibility of reconduction of the Lease.

### C. The Parties Entered Into a New Month-to-Month Lease as of January 1, 2021.

Under Louisiana law, all that is required to establish a contract to lease is "agreement as to the thing to be leased and the rent." LA. CIV. CODE art. 2670; *see also Waller Oil Co.*, 528 So. 2d

10

at 586.[3] Although the parties did not expressly reach a new agreement following the expiration of the Lease, the Court finds that their actions are sufficient to establish offer and consent to a month-to-month contract of lease for the Property at a fixed price of $4,500 per month. *See Rosedale Rental, Inc. v. Fransen*, 427 So. 2d 620, 623 (La. App. 5th Cir. 1983). After the expiration of the Lease, Seven Three continued to occupy the Property and 301NC accepted Seven Three's payments of $4,500 per month beginning in January 2021 and continuing through March 1, 2022.

The parties agreed on the thing and a price, but made no agreement on other terms, such as payment of ad valorem taxes. In the absence of such an agreement, Seven Three as the lessee is not responsible for payment of ad valorem taxes. *See Waller Oil Co.*, 528 So. 2d at 586–87; *see also Nykla Land Co. v. City of New Orleans*, 117 So. 918, 919 (La. 1928) (holding that "an assessment made in the name of one who does not appear on the public records to be the owner of the property, and who in fact is not the owner, is not a valid assessment").

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Motion seeking an allowed administrative expense claim under § 365(d)(3) or § 503(b) of the Bankruptcy Code for alleged post-petition rent shortfalls and payment of post-petition ad valorem taxes is **DENIED.**

**IT IS FURTHER ORDERED** that the Claim Objection is **SUSTAINED IN PART** and **DENIED IN PART** as follows:

---

[3] The caveats to that general rule contained in article 2670, *i.e.*, "unless the parties understood that the contract would not be binding until reduced to writing or until its other terms were agreed upon," are not applicable here.

(i)     To the extent that 301NC's Proof of Claim No. 9 requests prepetition and post-petition rent from the estate in amounts exceeding $4500 per month, the Proof of Claim is disallowed;

(ii)     To the extent that 301NC's Proof of Claim No. 9 requests reimbursement of prepetition ad valorem taxes, the Proof of Claim is disallowed;

(iii)     To the extent that 301NC's Proof of Claim No. 9 requests prepetition attorneys' fees, the Proof of Claim is disallowed; and

(iv)     Pursuant to the agreement of the parties, 301NC's Proof of Claim No. 9 is allowed as a prepetition general unsecured claim in the amount of $36,000, representing past-due rent due under the Lease through December 31, 2020, at the rate of $4,500 per month. *See* Stipulations, § 5.

New Orleans, Louisiana, September 19, 2022.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE